**VAN KLAVEREN**

v.

**KILLIAN-HOUSE CO.**

No. 14533.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

Tom H. King, San Antonio, Tex., Earl Street, Dallas, Tex., Stuart Rothman, Solicitor, Bessie Margolin, Chief of Appellate Litigation, David F. Babson, Jr., Attorney, United States Department of Labor, Washington, D. C., for appellant.

Lionel R. Fuller, San Antonio, Tex., Brewer, Matthews, Nowlin & Macfarlane, San Antonio, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing the appellant's claim under Sections 7 and 16 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended, 29 U.S. C.A. §§ 207, 216, for unpaid minimum and overtime wages, liquidated damages and attorney fees.

Appellant, Dick Van Klaveren, filed this employee's action against appellee Killian-House Company claiming that the total amount due him under the Act was $694.83 for the years 1949 and 1950 plus an equal sum as liquidated damages and the sum of $700.00 as a reasonable attorney's fee. The defendant denied the plaintiff's allegations, claimed among other things that plaintiff in performing his work was not engaged in interstate commerce within the meaning of the Act, and asserted good faith as against the demand for liquidated damages. A trial was had before the judge without a jury on stipulated facts and after the hearing below the court held in pertinent part that Van Klaveren was not engaged "in commerce" at the time of such work. This appeal followed.

The material facts may be briefly summarized as follows. Appellant was employed as a night watchman by appellee, a road construction contractor, for a period of approximately twenty and one-half weeks during 1949 and 1950. During this time appellee was engaged in construction work upon the San Antonio Expressway, a traffic artery, the construction of which has been and now is being prosecuted within the city limits of San Antonio, Texas, under contracts between the Texas State Highway Department and various contractors including appellee. The over-all integrated project involves (1) the construction of an entirely new Expressway over a right of way acquired by the condemnation of land previously occupied by buildings; and (2) the improvement of existing streets and highways to provide feeders into the Expressway. Appellee at various times and pursuant to four separate contracts constructed that part of the Expressway known as jobs or portions Nos. 1 and 2, and also did some work upon two feeder streets which led onto the Expressway, Herff Street and Culebra Avenue.

Appellant commenced working for appellee on December 10, 1949, at which time the Expressway job No. 1 had been completed[1] and appellee was working upon job No. 2 and the two feeder streets. Job No. 2 concerned that portion of the Expressway between the intersection of Marshall Street with the Expressway and the intersection of West Martin Street with the Expressway. Defendant's contract on Culebra Avenue called for the tearing up of the old pavement and the laying of new pavement approximately twice as wide as the old, as well as the installation of a new bridge over Alazan Creek, new drainage, new sidewalks, new gutter bottoms and new curbs, all of which defendant did in the performance of its contract. Defendant's contract on Herff Street called for the same specifications of construction (including a new bridge over Alazan Creek) as on the Culebra Avenue job, with the exception that the eastern

---

1. The parties stipulated that "Before plaintiff commenced working for defendant on December 10, 1949, defendant, under a fourth separate and distinct contract, had built on the Expressway itself, two underpasses, one under the Texas & New Orleans Railroad Lines and one under the Missouri-Pacific Railroad Lines, both interstate rail lines used in the transportation of goods in interstate commerce, and both having been so used prior to commencement of the building of the underpasses. Defendant actually built, as a part of the construction of the Expressway proper, the underpasses on this fourth job, but the respective railroads concerned actually removed and replaced the rails. * * * Plaintiff actually performed no work on the site of the railroad underpasses referred to, nor did he perform any work at any other place on the site of the Expressway No. 1 job, inasmuch as at the time defendant, pursuant to its fourth contract was working on the Expressway No. 1 job, plaintiff was not in the employ of defendant. * * *"

half of old Herff Street was abandoned and supplanted by a new section for which a right of way had been obtained and from which buildings had to be removed to allow for the construction of that new section. Appellant worked on all of these jobs and on others, spending the weeks of April 1 and April 15, 1950, on the site of job No. 2; ten days between July 31 and August 16, 1950, on the site of the San Pedro Creek bridge job which was a part of the Herff Street job; and from December 10, 1949, to March 25, 1950, and from April 8 to April 15, 1950, a total of seventeen weeks, on the site of the Alazan Creek Bridge job, a part of the Culebra Avenue job. The Culebra Avenue job was completed on April 11, 1950. Thereafter and following the periods of appellant's employment the Expressway No. 2 job and the Herff Street job were completed on November 29, 1950, and May 23, 1951, respectively. At the time Herff Street was completed it was not and had not been used as a feeder street to the Expressway proper as the portion of the Expressway to which Herff Street is intended to feed traffic had not then been completed.

Throughout the period of appellant's employment it affirmatively appears that no traffic either local or interstate went over that portion of the Expressway covered by job No. 2 and Herff Street and Culebra Avenue were then merely city streets. As to their subsequent use it appears that Herff Street was not a designated numbered part of either the U. S. Highway or State Highway system at any time before or during the time of construction on it, nor is it such a part of either system at the present time. On January 1, 1951, Culebra Avenue was officially designated as a portion of State Highway No. 16 by the Texas State Highway Department and this highway was relocated on that date down certain named streets to Culebra Avenue, and thence down Culebra Avenue and onto the Expressway. The construction of the Expressway as an entirety has not been completed.[2] Upon its completion at some future date, in accordance with plans of the State Highway Department made prior to commencement of the project, U. S. Highway 81, northbound and southbound, U. S. Highway 87, Northwest, and U. S. Highway 90, East, will be re-routed from existing nearby routes to the Expressway. All of the above-mentioned highways are accessible to, and used regularly by interstate traffic. These facts are in all material respects identical with those which were considered and discussed in Martinez v. Killian-House Co., Tex.Civ.App., 255 S. W.2d 227, and to which case we shall presently refer.

From the stipulated facts the trial court concluded that appellant was not engaged in commerce within the meaning of the Fair Labor Standards Act for two cogent reasons. First, because in the case of the Expressway project proper appellant's work was connected with original construction of an entirely new instrumentality of commerce not yet dedicated at the time of such work to use in such commerce. Second, and in respect to the Culebra Avenue and Herff Street projects his work was connected with city streets not then used, nor yet dedicated to use, as instrumentalities of interstate commerce. The court below also expressed the view that appellant was not engaged in the production of goods for commerce within the meaning of the Act. As to this phase of coverage there is no allegation or contention that he was so engaged, and it cannot here be said that he was engaged in the production of goods for commerce or was in any other manner working on such goods. We therefore put aside as inapposite cases like Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, where off-the-road em-

2. The stipulation of facts shows that in the entire Expressway project, underpasses will be built at seven different points under existing interstate railroad lines and the construction of the Expressway also involves highway overpasses and underpasses over and under existing interstate highways.

ployees were engaged in the production of goods to be used on a facility employed in interstate commerce, or to replace an interstate facility.

The narrow question here presented is whether at the times complained of the appellant was "engaged in commerce" within the meaning of Section 7(a) of the Act. It is clear from the authorities that persons engaged in the maintenance and repair of interstate instrumentalities are within the coverage of the Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751. It is equally clear that persons engaged in new construction of facilities which have not as yet become instrumentalities of commerce are not covered by the Act. Raymond v. Chicago, Milwaukee & St. Paul Ry. Co., 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583; J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719; Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383; Reed v. Murphey, 5 Cir., 168 F.2d 257; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191, 193; Martinez v. Killian-House Co., supra. In the case last mentioned it was squarely and we think properly held that the San Antonio Expressway was "new construction" prior to the time it was dedicated to commercial use and upon facts closely paralleling those present in the case at bar the Sixth Circuit held in Koepfle v. Garavaglia, supra, that the Edsel Ford Expressway in Detroit, Michigan, was "completely new * * * was clearly not being repaired * * *" and "was not and could not be an instrumentality of commerce, for it had not been opened to traffic." We are in accord with these decisions and conclude as did the court in the Koepfle case that the sound and applicable law does not sustain the sweeping contention here advanced that original construction upon land never before used as a highway falls within the definition of commerce because eventually some interstate commerce will move upon it. Nieves v. Standard Dredging Corp., supra; Crabb v. Welden Bros., 8 Cir., 164 F.2d 797; Scholl v. McWilliams Dredging Co., supra; Kam Koon Wan v. E. E. Black, Limited, 9 Cir., 188 F.2d 558; Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 162 F.2d 555; Wells v. Ford, Bacon & Davis, Inc., 6 Cir., 145 F.2d 240.

The judgment of the District Court is affirmed.