**James P. MITCHELL, Secretary, U. S. Department of Labor, Plaintiff,**

v.

**John D. RAINES, Defendant.**

Civ. A. No. 432.

United States District Court
Middle D. Georgia, Albany Division.

Dec. 15, 1955.

Norman H. Winston, Sanford H. Palmer, U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Leonard Farkas, Farkas, Landau & Davis, Albany, Ga., for defendant.

DAVIS, Chief Judge.

This is an action by the Secretary of Labor seeking an injunction against John D. Raines, an individual, for violations of the minimum wage, overtime, and record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The defendant resides in Ashburn, Georgia, within the jurisdiction of this Court and is the sole owner and operator of a sawmill and planer located in Ashburn, Georgia. The defendant admits that he has failed to comply with the minimum wage and overtime provisions of the Fair Labor Standards Act.

The evidence establishes that in some minor particulars the defendant has failed to comply with the record-keeping provisions of the Act. The only question remaining under the facts of this case is whether or not the defendant's employees were engaged in the production of goods for commerce, as defined in the Act, so as to make the Act applicable to his operation.

The defendant is engaged in general lumber business producing lumber for sale to the general public. During 1953, 1954 and 1955 the State Highway Department of Georgia purchased lumber from the defendant. To meet its needs for lumber, the Highway Department mailed out requests for bids to various lumber dealers in south Georgia. The contracts were awarded to the lowest bidders. Between July 1, 1953 and July 1, 1954, the defendant sold lumber in the total amount of $89,066.19. Of this amount, $76,839.68 was sold to the Highway Department by virtue of the defendant being the low bidder. In an undetermined number of cases, the defendant's bid was not the low bid and the contract was not awarded to him. With possibly one exception, neither the requests for bids, the bids, nor the requisitions on which the lumber was purchased specified the use to which the lumber was to be put. According to the testimony of the defendant, some of the lumber produced was actually cut to fill orders of the Highway Department. Once the lumber produced by the defendant was appropriated to the orders of the Highway Department, it was loaded, hauled and unloaded by employees of the defendant for use by the Highway Department. The lumber sold pursuant to the bids was delivered at the Highway Department yards and creosoting plant at Douglas, Georgia.

There is no evidence as to the purposes for which the lumber produced by the defendant was actually used, nor is there any evidence that this particular lumber has ever been used. A Division Engineer of the Highway Department testifying from general practices, testified that such lumber was bought to maintain bridges and erect signposts on the state highways of Georgia. He further testified that generally lumber purchased by the Department was used for the purposes for which purchased, but he stated positively that he could not testify as to the disposition or use of any of the lumber purchased from the defendant, other than to say that it was intermingled with other lumber in the yards of the Highway Department.

There is not sufficient evidence in this record to lead this Court to find that the lumber produced by the defendant was used to maintain and repair existing instrumentalities of commerce. This lumber may have been used to build a garage, fences, a warehouse, or even new bridges on new state roads. The construction of a new road, where one did not previously exist, has been held not to come within the coverage of the Act. Crabb v. Welden Bros., 8 Cir., 1947, 164 F.2d 797; Koepfle v. Garavaglia, 6 Cir., 1952, 200 F.2d 191; Van Klaveren v. Killian-House Co., 5 Cir., 1954, 210 F.2d 510, 43 A.L.R.2d 885. Clearly then, the construction of a bridge on a new highway or the furnishing of materials for such construction would not fall within the coverage of the Act.

The plaintiff has sought to show that the employees of defendant were producing goods for commerce by showing that such goods were used in the repair and maintenance of instrumentalities of commerce. The burden of proof is upon the plaintiff. He has failed to carry that burden and the Court must, therefore, conclude that the employees of the defendant were not engaged in production of goods for commerce within the meaning of the Act. It follows that the plaintiff is not entitled to the relief sought.

Even if the plaintiff were able to show the actual use of the lumber in repairing or maintaining instrumentalities of commerce, this would not satisfy plaintiff's burden. The purpose for which produced is the controlling factor,

not the use to which put. To hold otherwise would mean that an employer might not know whether his employees were covered until the final use of the goods produced, which could be years later. To require an employer to keep records and pay minimum and overtime wages in accordance with the Act now, when it cannot be determined for years whether the work is covered, would clearly create additional confusion in a field where enough exists. Assuming arguendo that the lumber produced by the defendant was used in commerce, there is insufficient evidence here to show that such lumber was produced for commerce. The only evidence to support such a contention is the large percentage of total output which was sold to the Highway Department. It should be borne in mind that the evidence reflects the amount of sales to the Highway Department for one year only and that all of these sales resulted from competitive bidding. The defendant had no assurance of success in such bidding and there is no evidence that his business was dependent upon sales to the Highway Department. He was in business prior to any proved sales to the Highway Department and conducted a general lumber business. It may be that he simply sold to the Highway Department because the prices were more advantageous. Government agencies frequently pay higher prices than individuals, even though they purchase on bids. The large percentage of his output which was sold to the Highway Department should not be controlling. In a field where the de minimis rule has been declared inapplicable, it would seem unwise to apply a de maximis rule.

Finally, even if the defendant were held to be producing goods for the Highway Department, it would not necessarily follow that he was producing goods for commerce. There is no evidence that all lumber purchased by the Highway Department is used in repair and maintenance of existing instrumentalities of commerce. There is no evidence which would lead this Court to find that the defendant knew or should have known

the use to which lumber sold the Highway Department would be put. There is nothing inherent in the sale of lumber to a highway department, which would put the seller on notice that the lumber would be used in interstate commerce. This case is clearly distinguishable from the cases of Allstate Construction Co. v. Durkin, 1953, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, and Tobin v. Celery City Printing Co., 5 Cir., 1952, 197 F.2d 228, wherein the products were such that at the time produced it was apparent from their nature that they would be used in interstate commerce.

For the reasons stated, the Court concludes that the plaintiff has failed to carry its burden of proof and has thus failed to show any violations on the part of the defendant.

Let the foregoing constitute the findings of fact and conclusions of law of the Court.

It is, therefore, ordered and adjudged that the relief sought be, and it is hereby, denied.