James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

S. A. HEALY COMPANY, an Ohio corporation, Defendant-Appellant.

No. 12777.

United States Court of Appeals
Seventh Circuit.

Oct. 31, 1960.

Petition for Rehearing En Banc Denied
Nov. 29, 1960.

Daniel M. Healy, Walter C. Healy, James L. Fox, Chicago, Ill., Healy, Newby, Barrett & Healy, Chicago, Ill., of counsel, for appellant.

Harold C. Nystrom, Bessie Margolin, U. S. Department of Labor, Washington, D. C., Herman Grant, Chicago, Ill., Beate Bloch, Attorney, United States Department of Labor, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.[1]

SCHNACKENBERG, Circuit Judge.

In an attempt to compel S. A. Healy Company, an Ohio corporation, defendant, to pay compensation at overtime rates for work performed in excess of 40 hours per week, James P. Mitchell, Secretary of Labor of the United States Department of Labor, plaintiff, filed this action for injunction in the district court, under § 15(a) (2) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.

The complaint charged that defendant employs [2] about 205 persons in and about the city of Chicago, Illinois, in the construction, reconstruction, enlargement, alteration, improvement and replacement of existing segments of the water supply system of said city, to facilitate and improve the supply of water to persons and firms in and about the city. A substantial portion of the water so supplied is sold to and used by instrumentalities of interstate commerce, to facilitate such commerce, and is sold to and used by persons and firms engaged in the production of goods for interstate commerce, to facilitate such production. These activities of defendant's employees constitute the engagement in commerce and in the production of goods for commerce within the meaning of the Act. Defendant denies these allegations.

The stipulated facts, sufficiently condensed, are as follows:

Defendant was a general contractor engaged in constructing a new tunnel (called the 79th Street tunnel) which was to become a part of the Chicago Water Works System. The 79th Street tunnel was to be 4.6 miles in length, extending from the filter plant reservoir in Lake Michigan at 79th Street to connections with the State Street and Stewart Avenue tunnels. The Chicago Water Works System was made up of three districts— North, Central and South—and each was supplied by its own system of water cribs and tunnels. The system had 61 miles of

---

1. Judge Castle was not present during the oral argument of this case and did not participate in the adoption of this opinion.

2. The charges in the complaint are in both the present and past tenses.

water tunnels connecting with 11 pumping stations and 4000 miles of water mains. The water was obtained from Lake Michigan through six water cribs.

The location of the 79th Street tunnel was within the area of the South District Filtration Plant, completed in 1945, which plant received raw, unfiltered water, by tunnel from the Edward F. Dunn Crib, opposite 68th Street and the Lake. This plant filtered and treated the raw water so received, which was then discharged into the water tunnel system and then conveyed to the pumping stations [3] by the tunnels. The water was then pumped by these stations into water mains which distributed the water to consumers within the City of Chicago and, at the city limits, large water mains delivered the water to 58 suburban communities and to 10 other consumers located outside the city limits, such as railroads and industrial establishments.

Defendant's contract provided not only for construction of the tunnel itself, but also for the construction of the tunnel and connections in the Filtered Water Reservoir, and the connections to the existing State Street and Stewart Avenue tunnels. This involved substantial work in the existing filtration plant itself and directly on the existing tunnels in operation.

The purpose of the construction of the 79th Street tunnel was to provide additional tunnel capacity to conduct greater amounts of water from the existing filtration plant to the Roseland and Western Avenue Pumping Stations to meet "an immediate need for a greater water supply within the South Water District" arising from an increase in the population and industrial development of the area which had strained the water distribution system to the limit of its capacity. The additional tunnel will provide a greater supply of water to the consumers served by the Roseland and Western Avenue Pumping Stations, which had previously been pumping a combined

daily average of only 236 million gallons of water in 1957, although their installed capacity exceeded 600 million gallons per day. During the three years preceding the construction of the new tunnel, approximately 30% of the total daily quantity of water distributed by the South District has been sold to commercial and industrial users, amounting in volume to over 100 millions gallons daily.

The question presented is whether or not defendant's employees engaged in construction of the 79th Street tunnel were covered by the Fair Labor Standards Act.

Section 3 of that Act, 29 U.S.C.A. § 203, provides:

"§ 203. Definitions

"As used in this chapter—

\* \* \* \* \* \*

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

\* \* \* \* \* \*

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essen-

---

**3.** 68th Street Pumping Station, Roseland Pumping Station, and Western Avenue Pumping Station.

tial to the production thereof, in any State. * * * "

Our problem is to determine whether the activities of defendant's employees in building a tunnel and connecting it with the existing water system were too remote from commerce or too incidental to it to justify our applying the Fair Labor Standards Act. Certain facts are particularly significant here. The work being done by defendant's employees was new construction; it was not maintenance or repair. The tunnel itself was not to be a facility of commerce; neither was it to be a facility of production. While it might be argued that the completed tunnel will independently support production facilities, construction of the tunnel itself is yet another step more remote from production of goods for commerce. Even if it be conceded for the sake of argument that both the construction and the operation of this tunnel are equally "directly essential" to the producers who require the water passing through the tunnel and distributed, neither the construction nor the operation of the tunnel is designed for their use. To the contrary, the water is supplied by the city to a miscellany of users throughout a geographic area including a large part of the city and some adjacent territory, and somewhat less than one-third of the consumption is by producers.

It therefore follows that the facts show a remoteness of this construction from production for commerce as well as an absence of a dedication of the completed facility either exclusively or primarily to such production and that hence defendant's activity is not "closely related" or "directly essential" to production for commerce. Since the judgment appealed from was entered in the district court, the Supreme Court has decided Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 which is decisive of the case before us. In fact, we confess that in stating the significant facts, supra, we plagiarized the language of the court in that case, hoping that our desire to reach a correct result justifies the means employed.

In Zachry, the court said at page 320 of 362 U.S., at page 746 of 80 S.Ct.:

"Moreover, though construction and operation of this dam are equally 'directly essential' to the producers who require the water impounded and distributed, neither the construction nor the operation of the dam is designed for their use. Water is supplied by the District to a miscellany of users throughout its geographical area, and somewhat less than half of the consumption is by producers. These facilities, and their construction, are thus to be differentiated from the irrigation system in the Farmers Reservoir case [Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672], which was dedicated exclusively to supply water to farmers producing for commerce."

and at page 321 of 362 U.S. at page 746 of 80 S.Ct.:

"* * * Bearing in mind the cautionary revision in 1949, and that the focal center of coverage is 'commerce,' the combination of the remoteness of this construction from production, and the absence of a dedication of the completed facilities either exclusively or primarily to production, persuades us that the activity is not 'closely related' or 'directly essential' to production for commerce."

It is our conclusion therefore that we must and do answer in the negative the question presented, i. e., whether or not defendant's employees engaged in the construction of the 79th Street tunnel were covered by the Fair Labor Standards Act.

While appellant has not asked us to reverse the decree of the district court, which we expected it to ask, and contents itself with appealing from the "decision and injunction issued thereon", in order to give finality to our views we shall reverse the decree of the district court.

Decree reversed.