## ALSTATE CONSTRUCTION CO. *v.* DURKIN, SECRETARY OF LABOR.

No. 296.   Argued February 2–3, 1953.—Decided March 9, 1953.

*Samuel A. Schreckengaust, Jr.* argued the cause for petitioner.   With him on the brief was *Gilbert Nurick.*

*Bessie Margolin* argued the cause for respondent.   With her on the brief were *Solicitor General Cummings* and *William S. Tyson.*

*Charles A. Horsky, W. Crosby Roper, Jr.* and *Amy Ruth Mahin* filed a brief for the National Sand & Gravel Association, as *amicus curiae,* urging reversal.

Mr. Justice Black delivered the opinion of the Court.

Section 7 (a) of the Fair Labor Standards Act requires employers to pay each employee covered by the Act not less than one and one-half times his regular pay rate for

every hour worked in excess of a forty-hour week; § 11 (c) requires employers to keep appropriate employment records.[1] Employees covered are defined as those "engaged in commerce or in the production of goods for commerce." We have held that employees repairing interstate roads or railroads are "engaged in commerce" within the meaning of that clause of § 7 (a).[2] The question presented in this case is whether employees who work off such roads in the production of materials to repair them are engaged "in the production of goods for commerce" within the meaning of § 7 (a).

The Wage and Hour Administrator sued in District Court to enjoin the petitioner Alstate Construction Company from violating the overtime and record-keeping provisions of the Act. The District Court found: Alstate is a Pennsylvania road contractor that reconstructs and repairs roads, railroads, parkways and like facilities in that state. The company also manufactures at three Pennsylvania plants a bituminous concrete road surfacing mixture called amesite made from materials either bought or quarried in Pennsylvania. Most of it is applied to Pennsylvania roads either by Alstate's own employees or by Alstate's customers. Eighty-five and one-half percent of Alstate's work here involved was done on interstate roads, railroads, or for Pennsylvania companies producing goods for interstate commerce, and 14½% was done on projects that did not relate to interstate commerce. Alstate made no attempt to segregate payments to its employees on the basis of whether their work involved interstate or intrastate activities.

---

[1] 52 Stat. 1060, as amended, 63 Stat. 910, 912–913, 29 U. S. C. §§ 207 (a), 211 (c).

[2] *Overstreet* v. *North Shore Corp.*, 318 U. S. 125; *Pedersen* v. *Fitzgerald Construction Co.*, 318 U. S. 740, reversing 288 N. Y. 687, 43 N. E. 2d 83, on the authority of *Overstreet* v. *North Shore Corp.*, *supra*.

The District Court held that all of Alstate's employees were covered by the Act and granted the injunction prayed. 95 F. Supp. 585. The Court of Appeals for the Third Circuit affirmed, holding that those employees of Alstate who worked on roads were "in commerce," and that its "off-the-road" plant employees were producing road materials "for commerce." 195 F. 2d 577. On similar facts, the Court of Appeals for the Eighth Circuit applied the Act to "off-the-road" employees. *Tobin* v. *Johnson,* 198 F. 2d 130. An opposite result was reached by the Tenth Circuit in *E. C. Schroeder Co.* v. *Clifton,* 153 F. 2d 385, and the Supreme Court of Pennsylvania in *Thomas* v. *Hempt Bros.,* 371 Pa. 383, 89 A. 2d 776. To settle this question we granted certiorari in this and the *Hempt Bros.* case. 344 U. S. 895.

Amesite is produced in Pennsylvania for use on Pennsylvania roads. None of it is manufactured with a purpose to ship it across state lines. For this reason, so Alstate contends, amesite is not produced "for commerce." Obviously, acceptance of this contention would require us to read "production of goods for commerce" as though written "production of goods for transportation in commerce"—that is, across state lines. Such limiting language did appear in the bill as it passed the Senate,[3] but Congress left it out of the Act as passed. Of course production of "goods" for the purpose of shipping them across state lines is production "for commerce." But we could not hold—consistently with *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, and *Pedersen* v. *Fitzgerald Construction Co.,* 318 U. S. 740—that the only way to produce goods "for commerce" is to produce them for transportation across state lines.

In the *Overstreet* and *Pedersen* cases, *supra,* we had to decide whether employees engaged in repairing inter-

---

[3] 81 Cong. Rec. 7957.

state roads and railroads were "in commerce." In *Overstreet* we pointed out that interstate roads and railroads are indispensable "instrumentalities" in the carriage of persons and goods that move in interstate commerce. We then held that because roads and railroads are in law and in fact integrated and indispensable parts of our system of commerce among the states, employees repairing them are "in commerce." Consequently he who serves interstate highways and railroads serves commerce. By the same token he who produces goods for these indispensable and inseparable parts of commerce produces goods for commerce. We therefore conclude that Alstate's off-the-road employees were covered by the Act because engaged in "production of goods for commerce."

It is contended that we should not construe the Act as covering the "off-the-road" employees because it was given a contrary interpretation by its administrators from 1938 until 1945. During these first years after the Act's passage the administrator did take such a position. But more experience with the Act together with judicial construction of its scope [4] convinced its administrators that the first interpretation was unjustifiably narrow. He therefore publicly announced that off-the-road employees like these were protected by the Act. The new interpretation was reported to congressional committees on a number of occasions. Interested employers severely criticized the administrator's changes. Specific amendments were urged to neutralize his interpretation. Such neutralizing amendments were suggested to congressional committees by the National Sand and Gravel Association which has filed a brief before

---

[4] *Fleming* v. *Atlantic Co.*, 40 F. Supp. 654, affirmed *sub nom. Atlantic Co.* v. *Walling*, 131 F. 2d 518; *Lewis* v. *Florida Power & Light Co.*, 154 F. 2d 751; *Southern United Ice Co.* v. *Hendrix*, 153 F. 2d 689; *Chapman* v. *Home Ice Co.*, 136 F. 2d 353.

us as *amicus curiae*.[5]  Instead of adopting any of the suggestions to undermine the administrator's interpretation, Congress in a 1949 amendment to the Fair Labor Standards Act provided that all past orders, regulations and interpretations of the administrator should remain in effect "except to the extent that any such order, regulation, interpretation, . . . may be inconsistent with the provisions of this Act, or may from time to time be amended, modified, or rescinded by the Administrator . . . ."[6]

We decline to repudiate an administrative interpretation of the Act which Congress refused to repudiate after being repeatedly urged to do so.

There is an objection to the scope of the injunction, but we are satisfied with the Court of Appeals' treatment of this contention.

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE FRANKFURTER concurs, dissenting.

The Court reasons that if the man who is building or repairing an interstate highway is "engaged in commerce," the one who carries cement and gravel to him from a nearby pit is "engaged in the production of goods for commerce."  Yet if that is true, how about the men who produce the tools for those who carry the cement and gravel or those who furnish the materials to make the tools used in producing the cement and gravel? Each would be essential to the highway worker "engaged in commerce."  Yet the circle gets amazingly large once we say that "the production of goods for commerce" includes the "production of goods for those engaged in commerce."  Cf. *McLeod* v. *Threlkeld,* 319 U. S. 491.

---

[5] See for illustration Hearings before Subcommittee No. 4 of House Committee on Education and Labor on H. R. 40, 80th Cong., 1st Sess. 1374–1375.

[6] 63 Stat. 910, 920.

A person who is maintaining or repairing interstate transportation facilities is "engaged in commerce." *Overstreet* v. *North Shore Corp.,* 318 U. S. 125. A person who is creating articles destined for the channels of interstate commerce and all others who have such a close and immediate connection with the process as to be an essential or necessary part of it are engaged in "the production of goods for commerce." See *Kirschbaum Co.* v. *Walling,* 316 U. S. 517. If those who serve those "engaged in commerce" are also included, a large measure of cases affecting commerce are brought into the Act. Yet the history of the Act shows that no such extension of the federal domain was intended. See *Kirschbaum Co.* v. *Walling, supra,* pp. 522–523. If those whose activities are necessary or essential to support those who are "engaged in commerce" are to be brought under the Act, I think an amendment of the Act would be necessary.