MITCHELL, Secretary of Labor
v.
EMULSIFIED ASPHALT PRODUCTS CO.

Civ. A. No. 2179.

United States District Court
E. D. Tennessee, N. D.

April 29, 1954.

its place of business in Knoxville, Tennessee, from outside the State for the manufacture of asphalt products which are sold to the State of Tennessee, to Knox County, to the City of Knoxville, and to the Louisville and Nashville Railroad; that the purchasers have used and are using asphalt products to maintain, repair and reconstruct roads and rights of way and other facilities which are instrumentalities of interstate commerce, and that defendant's 11 employees (clerks, watchmen, truck drivers, pump men, and laborers) accordingly are "engaged in interstate commerce and in the production of goods for interstate commerce."

Defendant admits that those of its employees who receive and handle material shipped to this defendant from states other than the State of Tennessee, are engaged in activities which by their nature place such employees in the category of "engaging in interstate commerce."

Defendant denies that it has violated the sections relating to wages, hours, and the keeping of records. This denial is based upon the contention that the employees sought to be brought under the Act by the plaintiff are not covered by the Act.

The issue, as stated in the pretrial order filed on September 11, 1953, is: "Do defendant's activities bring it and its employees within the coverage of the Fair Labor Standards Act?"

Defendant admits that if the employees involved in this suit are covered by the Act that it has not complied with the wage and hour and record keeping regulations of the Act.

Defendant produces a product known as emulsified asphalt which is used as a binder for material used in the repair and maintenance of streets and highways. More than 85% of the material produced is sold by defendant to various cities, towns and counties within the local marketing area near defendant's plant, which is located in Knoxville, Tennessee. The purchasers of this material

Stuart Rothman, Solicitor, William A. Lowe, Chief of Trial Litigation, U. S. Dept. of Labor, Washington, D. C., Jeter S. Ray, Reg. Atty., David V. Manker, Atty., Nashville, Tenn., for plaintiff.

H. H. Mc Campbell, **Jr.**, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action for injunction restraining defendant from violating 29 U.S.C.A. §§ 215(a)(2) and 215(a) (5), the violations alleged being failure to pay the minimum wage for a 40 hour week and time and one-half the regular wage for hours in excess of 40 per week and failure to keep records, as required by the Fair Labor Standards Act.

Plaintiff alleges that defendant is engaged in the use of material shipped to

obtain it at the defendant's plant site in Knoxville and take it to job sites within the State of Tennessee, where it is used with other road material to repair and maintain the streets and highways under the jurisdiction of the agencies of local government. Something less than 1% of this material produced by the defendant during the period involved in this litigation was sold to the Louisville and Nashville Railroad, which used it for grade crossing maintenance and repair.

The case was tried primarily on stipulations, with some additional testimony given by Mr. B. C. Barker, Director of Public Service of the City of Knoxville, Tennessee, and by Mr. Frank Whitfield, President of the defendant corporation.

During the period involved in this suit, namely, from January 25, 1950, to May 18, 1953, defendant sold to the City of Knoxville and to Knox County 69% of its output, which was transported by the purchasers to job sites where it was used to patch, repair and maintain various roads, streets, and highways in Knoxville and Knox County, Tennessee, including, but not limited to, the various roads set forth in the stipulation.

Paragraph 3 of the stipulation shows that these roads are regularly used by motor trucks, and over-the-road tractor-trailer type motor transport trucks operated by numerous common carriers of freight, including a large number of large truck lines, some of which are named in paragraph 3 of the stipulation, and that other trucks used by common, contract, and private carriers engaged in transporting goods in interstate commerce daily travel on, over and across the roads, streets and highways named in paragraph 2 of the stipulation.

Paragraph 4 stipulates that motor vehicles transporting the United States mail daily travel on, over and across the various roads, streets and highways referred to in paragraph 2.

Paper Mill Road, one of the roads named in paragraph 2, is an officially designated truck route for traffic on U. S. Highways Nos. 11 and 70, and several highway maintenance men spend about ten days each month patching, repairing and maintaining this Paper Mill Road with emulsified asphalt paving material produced by the defendant and its employees.

During the period involved in this litigation, and until September 1953, another road named in paragraph 2 was marked with "truck route" signs similar to those appearing on Paper Mill Road.

In paragraph 7 of this stipulation, a number of large business institutions located in Knoxville and Knox County, Tennessee, are named and it is stated that they are engaged in interstate commerce and in the production of goods for interstate commerce, as defined by the Act.

In paragraph 8, many of the roads, streets and highways referred to in paragraph 2 are in daily use by common, contract and private carriers, including those referred to and named in paragraph 3, in transporting to and from the establishments referred to in paragraph 7, goods received from and consigned to various states other than Tennessee.

In paragraph 9, it is stipulated that motor trucks using U. S. Highway No. 25–W from out of state points north of Knoxville to points on U. S. Highways Nos. 11 and 70 south and west of Knoxville, and, similarly, motor transport trucks using U. S. Highways Nos. 11 and 70 from out of state points south and west of Knoxville to points on U. S. Highway No. 25–W north of Knoxville daily avoid travelling into and through downtown Knoxville (with a resulting reduction of 8.8 miles) by the use of a by-pass or cut-off route over Ball Camp Pike, Ball Road, Schaad Road and Lovell Road extending 13.1 miles between a point on U. S. Highway No. 25–W at or near Aeroplane Service Station (8.3 miles from downtown Knoxville) to a point on U. S. Highways Nos. 11 and 70 at the intersection of Lovell Road and the Kingston Pike (13.6 miles from downtown Knoxville).

The roads referred to in paragraph 9 are named in paragraph 2.

In stipulation filed February 18, 1954, it is agreed that B. C. Barker, Director, Department of Public Service, City of Knoxville, Tennessee, if called as a witness, would have testified in substance that none of defendant's product has been used in connection with the main thoroughfares of the City of Knoxville, and that such as has been used by the city has been used on secondary streets. In his oral testimony given at the trial, he stated that he classified all roads and streets as secondary which were not designated as State highways, or as U. S. highways.

It is further stipulated that George C. Bearden, Commissioner of Highways and Public Works of Knox County, Tennessee, if called as a witness, would testify in substance that Knox County uses products of defendant on county roads, but that none of the county roads on which such products are used was designed or built with the idea of sustaining heavy truck hauling such as trucks used by national trucking companies in interstate trucking; also, that insofar as possible on those roads on which defendant's product is used interstate trucking is excluded for the reason that the roads will not sustain the heavy loads that are carried by interstate traffic.

It is stipulated further, however, that he would testify that some of the county roads do accommodate interstate truck traffic; that Paper Mill Road has been designated as a truck route, but that the Knox County Highway system was designed and built to take care of rural traffic coming into Knoxville, was not designed for heavy interstate and intercity traffic, and that such traffic is not desirable.

It is the contention of the defendant that, although the roads named in the stipulation are used regularly by interstate vehicular traffic, it is not the intention of the local agencies for them to be so used; that they were built for local traffic and not for interstate traffic and are therefore not instrumentalities of interstate commerce. In other words, defendant says that the character of the instrumentality is determined by the purpose for which it was built, with whose money it was built, how it was labelled, and how it was constructed.

Plaintiff contends that the factors contended for by the defendant in determining whether or not roads listed in paragraph 2 of the stipulation and which, under the stipulation, are used regularly by interstate vehicular traffic, are not determinative of the character of the instrumentality, but that the use to which they are put does determine whether or not they are interstate commerce instrumentalities, or local instrumentalities.

It is the opinion of the Court that the roads listed in paragraph 2 of the stipulation are instrumentalities of interstate commerce and that since it is agreed that the product furnished by the defendant is used to maintain, patch and repair these roads the employees who produce these materials are engaged in the production of goods for interstate commerce and are within the coverage of the Act and that their employer is subject to the requirements of the Act.

The Supreme Court of the United States recently had before it cases which in the opinion of the Court force the conclusion herein reached. See Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751; Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; also Mabee v. White Plains Pub. Co., 327 U.S. 178, 179, 66 S.Ct. 511, 90 L.Ed. 607, wherein the de minimus rule is rejected; and Overstreet v. North Shore Corp., 318 U.S. 125, 63 S. Ct. 494, 87 L.Ed. 656.