Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Mack MORRIS, individually and doing business as Mack Morris Trucking Company, Defendant.

Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Mack MORRIS, Defendant.

Nos. 1405, 1406.

United States District Court
E. D. Kentucky,
at Lexington.
May 8, 1962.

Jeter S. Ray, Marvin M. Tincher, U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Gracey, Buck, Maddin & Cowan, Robert H. Cowan, Nashville, Tenn., for defendant.

HIRAM CHURCH FORD, Chief Judge.

The above entitled cases were consolidated for the purpose of trial and, upon the testimony and exhibits filed on March 6 and March 21, 1961, they are submitted to the Court for judgment without the intervention of a jury.

By action No. 1405 the Secretary of Labor seeks to enjoin the Defendant from violating the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act.

It is shown by the testimony that during the period here in question the defendant Mack Morris operated a fleet of dump trucks for the purpose of hauling crushed rock, black top and other materials from quarries to various public road and highway projects, and in so doing employed 7 or 8 employees as drivers of his trucks. The headquarters of his hauling business was at Carmargo, Kentucky, and his employees lived in that vicinity.

■ During the period from June 25, 1958, to April 4, 1960, defendant's employees were engaged in hauling materials for the repair and maintenance of state highways, federal highways and public secondary rural road projects, and also for use in repairing ramps at the Blue Grass Ordnance Depot used in loading materials to be shipped to other states and to a railroad siding at Winchester, Kentucky, for the loading of materials to be shipped for public road projects. While a large amount of the materials hauled was for rural secondary road projects, all such secondary roads are shown to connect directly or through other roads with state and federal interstate highways. It seems clear from the testimony that the employees of the defendant were engaged at all times here involved in the "production of goods" for instrumentalities of interstate commerce, and the business of the defendant was within the coverage of the Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751; Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; Mitchell v. Owen, 292 F.2d 71 (C.A.6); Austford v. Goldberg, 292 F.2d 234 (C.A. 8), and Emulsified Asphalt Products Co. v. Mitchell, 222 F.2d 913, (C.A.6).

■ While the defendant did make certain records which had some semblance of conformity to the regulations governing such matters, such records as he kept fall far short of the requirements under the applicable regulations pertaining to record keeping. See Regulation No. 516.2 set out in Appendix following § 262 of Title 29 U.S.C.A. at page 487 et seq. (29 C.F.R. chapter V, part 516.2).

■ By action No. 1406, the Secretary of Labor seeks to recover on behalf of Corbit Montgomery, one of the employees of the defendant in the business above referred to, unpaid minimum wages and overtime compensation pursuant to 29 U.S.C.A. § 216(c).

In the original complaint the amount sought to be recovered on this account

was the sum of $401.10, but after the trial the plaintiff amended the complaint seeking to recover $1132.90 with interest.

Montgomery testified that he was not paid at the rate of one dollar per hour during numerous working weeks and that he worked in excess of forty hours during most of the weeks he was employed without receiving overtime compensation. In support of his claim, as set out in the complaint, as amended, plaintiff offers a record allegedly kept by Montgomery and his wife, of the days and hours he worked for defendant. This record relied upon by the plaintiff is not an original record, but an alleged copy of an original. According to the testimony of Montgomery's wife, she made the copy introduced in evidence. The original was claimed to have been lost. There is much evidence in the record indicating that the copy of the records kept by Montgomery, as well as the records kept by the defendant, his employer, are inadequate and unreliable and of little probative value in accurately reflecting the overtime worked by Montgomery during the period in question.

In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–7–8, 66 S.Ct. 1187, 1191, 90 L.Ed. 1515, the Court said:

"* * * An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

"When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

It appears that the Wage and Hour investigator computed the unpaid minimum wage and overtime compensation due Montgomery to be $401.10, the amount originally set out in the complaint. This

amount was corrected to $402.10. (See testimony of Claiborne W. Carden, beginning on page 31 of the transcript of testimony taken upon the continuation of the trial on March 21, 1961, Exhibit No. 32).

Under the Mt. Clemens Pottery Company case, supra, I am of the opinion that the testimony introduced on behalf of Montgomery is sufficient to show that he did, in fact, perform work for the defendant in carrying on his enterprise hereinbefore described, "for which he was improperly compensated" and sufficiently shows the amount and extent thereof to be $402.10 "as a matter of just and reasonable inference". The employer failed to produce evidence sufficient to negative the reasonableness of the inference and the employee Montgomery is entitled to recover on account thereof the sum of $402.10.

Judgment should be entered granting the injunction sought in action No. 1405 and awarding plaintiff judgment for the sum of $402.10 in action No. 1406.