In re Coordinated Pre-Trial Proceedings
In WESTERN LIQUID ASPHALT
CASES.

COPP PAVING COMPANY, INC., et al.,
Appellants,

v.

GULF OIL COMPANY et al.,
Appellees.

No. 72–2152.

United States Court of Appeals,
Ninth Circuit.

Oct. 3, 1973.

Ct - App. rev'd by S. Ct. - no Interstate Comm.
Certiorari Granted March 25, 1974.
See 94 S.Ct. 1586.

See, also, 9 Cir., 487 F.2d 191.

Jack Corinblit (argued), Martin M. Shapero, Corinblit & Shapero, Los Angeles, Cal., Evelle J. Younger, Atty. Gen., Michael I. Spiegel, Deputy Atty. Gen., San Francisco, Cal., for appellants.

George A. Cumming, Jr. (argued), Moses Lasky, Richard Haas, Brobeck, Phleger & Harrison, San Francisco, Cal., Richard J. MacLaury, Pillsbury, Madison & Sutro, San Francisco, Cal., Richard W. Curtis, Fred Laymon, Gulf Oil Corp., Los Angeles, Cal., Donald C. Smaltz, Ralph B. Perry, III, Grossman, Smaltz, Graven & Perry, Los Angeles, Cal., Douglas C. Gregg, E. A. McFadden, Union Oil Co. of California, Los Angeles, Cal., for appellees.

Before CARTER and GOODWIN, Circuit Judges, and FERGUSON, District Judge.*

ALFRED T. GOODWIN, Circuit Judge:

Copp Paving and related antitrust plaintiffs appeal from the dismissal of their claims against certain major oil companies and related defendants for want of jurisdiction.

Plaintiffs process asphaltic concrete and sell and deliver paving materials to construction jobs in California. Except for some imported crude oil which may find its way into their end-product, plaintiffs concede that they process California-produced materials and deliver all of their product to California construction sites.

Defendants Gulf Oil, Union Oil of California, and Edgington Oil Company are producers of asphaltic oil; defendants Industrial Asphalt, Inc., and Sully-Miller Contracting Company are competitors of plaintiffs.

Plaintiffs alleged that defendants had violated §§ 1 and 2 of the Sherman Act by conspiracy in restraint of trade and monopolization, §§ 3 and 7 of the Clayton Act by tieing agreements and illegal acquisitions (of Sully-Miller by Union and Industrial Asphalt by Gulf), and § 2(a) of the Robinson-Patman Act by price discrimination.

* The Honorable Warren John Ferguson, Unted States District Judge for the Central District of California, sitting by designation.

The district court held, on these facts, that the essential element of interstate commerce was missing from the asserted claims based upon various sections of the Sherman, Clayton, and Robinson-Patman Acts.

This interlocutory appeal was taken pursuant to 28 U.S.C. § 1292(b) because the threshold question of interstate commerce is critical in the further course of this and related litigation.

The district court held that the production of asphaltic concrete, a substantial amount of which was used to construct interstate highways, was neither "in" nor did it "affect" interstate commerce. We hold that the production of asphalt for use in interstate highways rendered the producers "instrumentalities" of interstate commerce and placed them "in" that commerce as a matter of law.

■■ We start with the proposition that Congress in passing the Sherman Act desired to exercise the full extent of its Constitutional power in restraining trust and monopoly agreements. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 558–559, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Rasmussen v. American Dairy Ass'n, 472 F.2d 517 (9th Cir. 1972) (quoting); United States v. South Florida Asphalt Co., 329 F.2d 860, 867 (5th Cir.) (quoting), cert. denied sub nom., R. H. Wright, Inc. v. United States, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964); United States v. Chrysler Corp. Parts Wholesalers, Northwest Region, 180 F.2d 557, 559 (9th Cir. 1950) (quoting). As the Supreme Court's reading of the commerce clause has broadened over time, so has its interpretation of the jurisdictional scope of the Sherman Act. See cases collected at Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 230–231, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). Thus, every Sherman-Act holding that jurisdiction does not lie is a holding that the evil alleged is beyond the power of Congress to control. Conversely, a holding that conduct is within the reach of Congress' constitutional power for some other purpose is entitled to great weight in a Sherman Act case. See Rasmussen v. American Dairy Ass'n, 472 F.2d at 522, 523 n. 13; Fort Lauderdale v. East Coast Asphalt Corp., 329 F.2d 871 (5th Cir. 1964); De Gorter v. F. T. C., 244 F.2d 270 (9th Cir. 1957).

■ There are, of course, limits to the technique of relying on determinations of the breadth of the commerce power made in one area of congressional regulation in order to determine the breadth of the commerce power in another. First, "interstate commerce is an intensely practical concept drawn from the normal and accepted course of business." United States v. Yellow Cab Co., 332 U.S. 218, 231, 67 S.Ct. 1560, 1567, 91 L.Ed. 2010, 2020 (1947). See North American Co. v. SEC, 327 U.S. 686, 705, 66 S.Ct. 785, 90 L.Ed. 945 (1946); Overstreet v. North Shore Corp., 318 U.S. 125, 128, 63 S.Ct. 494, 87 L.Ed. 656 (1943). Although the power of Congress over commerce is unitary, different evils sought to be regulated may impinge on commerce in different ways and to differing extents, and the power of Congress may vary accordingly. See McLeod v. Threlkeld, 319 U.S. 491, 495, 68 S.Ct. 1248, 87 L.Ed. 1538 (1943). Regulation of business practices through the antitrust laws, for example, may justifiably reach further than some other types of regulation because the antitrust laws are concerned directly with aiding the flow of commerce.

■ Second, the Congressional power is not over persons but over practices. It is irrelevant that a person is in some way engaged in interstate commerce if the practice complained of is in no way related to that commerce. Yellow Cab Co. of Nevada v. Cab Employers, Automotive & Warehousemen, Local 881, 457 F.2d 1032, 1034 (9th Cir. 1972).

For example, in United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Supreme Court held that there was Sherman Act jurisdiction over that portion of a complaint which alleged that the Yellow Cab Com-

pany had attempted to monopolize the carrying of passengers between two interstate railroad termini in Chicago, but held that there was no jurisdiction over the allegations that the same company had violated the Sherman Act in its intracity carriage. And in Page v. Work, 290 F.2d 323 (9th Cir. 1961), this circuit held that it lacked jurisdiction over a claim by a Los Angeles newspaper that other papers had injured it by diverting some of its legal advertising, a strictly local product, although the newspapers were subject to federal regulation in other ways because they purchased out-of-state newsprint and sold a few papers out of state. While a conspiracy of the newspapers to control the interstate aspects of their business obviously would have been "in" commerce, a conspiracy involving only a strictly local product was only within the power of Congress to control if it "affected" commerce.

■■■ A very different function is involved when courts pass on a congressional decision that certain activities affect commerce than when the courts are asked to determine that question for themselves. Katzenbach v. McClung, 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed. 2d 290 (1964). A congressional determination that particular activities affect commerce receives deference in court. United States v. Rodriguez-Camacho, 468 F.2d 1220 (9th Cir. 1972). However, under the Sherman Act, Congress has left it to the courts to determine whether activities affect interstate commerce. United States v. Darby, 312 U.S. 100, 120, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Therefore, in reviewing a defendant's conduct for compliance with the Sherman, Clayton, and Robinson-Patman Acts, the court must make its own decision.

In Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943), the Supreme Court held that vehicular roads were instrumentalities of interstate commerce and that persons repairing them were "engaged in commerce" and therefore covered by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. In Alstate Construction v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1953), the Supreme Court extended *Overstreet* to hold that those engaged in the local production of a road surfacing mixture for local use in an interstate highway were also covered by the Act. The test said to be applicable to these cases was "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 862, 99 L.Ed. 1196, 1200 (1955).

■ We agree with the Fifth Circuit in Fort Lauderdale v. East Coast Asphalt Corp., *supra*, that those cases control this one. If highway builders and suppliers are "in" commerce because of their close relationship with an instrumentality of interstate commerce for labor relations purposes, they are in commerce for the regulation of price fixing and monopolization. *See* Mandeville Island Farms, Inc. v. American Sugar Co., *supra*. *See also* United States v. Shubert, 348 U.S. 222, 226–227, 75 S.Ct. 277, 99 L.Ed. 279 (1955). Furthermore it is not incidental activities unrelated to the interstate nexus of these businesses which were alleged to have been involved here, but illegal manipulation of the very costs and products which put these same businesses "in" interstate commerce for purposes of the Fair Labor Standards Act. The reach of Congress' commerce power for Sherman Act purposes is no shorter than it is for any other purpose.

■ Plaintiffs asserted claims under the Clayton and Robinson-Patman Acts as well as under the Sherman Act. Section 3 of the Clayton Act prohibits tieing arrangements by "any person engaged in commerce." For there to be jurisdiction under the Clayton Act § 7, both the "acquired" and the "acquiring" companies must be "in commerce." Robinson-Patman price discrimination jurisdiction depends on the sales involved, as well as the selling company being "in commerce." Defendants argue that the "in

commerce" requirements of these statutes are satisfied only by sales which cross state lines. While recognizing that this position has recently been adopted by another circuit with respect to the Robinson-Patman Act, it should be noted that the court there did not consider, because the facts did not require it to, whether this state-line test also applies to sales of a commodity (such as asphalt used in the construction of interstate highways) which is itself closely linked to an instrumentality of interstate commerce. *See* Littlejohn v. Shell Oil Co., 483 F.2d 1140 (5th Cir., 1973) (en banc). We see no reason why sales which are "in commerce" because of their nexus with an instrumentality of interstate commerce must also satisfy a state-line test of "in commerce." To be sure, the statutory language of the Clayton and Robinson-Patman Acts is not as broad and flexible as that of the Sherman Act. Nevertheless, the fact that these acts were intended to supplement the purpose and effect of the Sherman Act supports a uniform interpretation of the "in commerce" requirement present in all three acts. *See* United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963); Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653 (1922). *See also* Conference Rep.H.R.Rep.No.2951, 74th Cong., 2d Sess. (1936). Nor can we accept defendants' argument that the plaintiffs must show not only that the parties and sales are "in" commerce but must show that competition was injured before the court has jurisdiction. This is the result of confusing the substantive with the jurisdictional requirements of the antitrust laws. It is not necessary for a plaintiff to prove his whole case in order to give the courts jurisdiction to hear it.

▮ Plaintiff also appeals the district court's refusal to take pendent jurisdiction of a state antitrust claim against defendants. In view of the complexity of the litigation and number of parties in these consolidated antitrust ac-

tions, the refusal was within the discretion of the district court.

The partial summary judgment in favor of all defendants except the defendant Sully-Miller is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

The question of the summary judgment in favor of the defendant Sully-Miller is reserved, as it was not properly before this court under Fed.R.Civ.P. 54 (b).

Reversed and remanded.