Candace Rae JOLES, Plaintiff,

v.

## JOHNSON COUNTY YOUTH SERVICE BUREAU, INC., Defendant.

### No. IP 91–1699–C–T/F.

United States District Court, S.D. Indiana, Indianapolis Division.

March 31, 1995.

---

Daniel C. McCarthy, Greenwood, IN, for Candace Rae Joles.

Stephen L. Huddleston, Franklin, IN, for Youth Service Bureau, Johnson County.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW.

FOSTER, United States Magistrate Judge.

This cause was tried by the Court before this Magistrate Judge pursuant to the parties' consents and the reference of the assigned district judge. The plaintiff asserts two claims. She sues under Section 16 of the Fair Labor Standards Act of 1938 ("F.L.S.A."), June 25, 1938, chap. 676, 52 Stat. 1059, as amended, 29 U.S.C. § 216(b) (hereinafter cited to "U.S.C."), for back pay, damages, and attorneys fees, alleging that the defendant failed to pay overtime compensation in violation of § 207(a)(1) of the Act. She also asserts a claim under Acts 1933, ch. 47, § 1 *et seq.*, p. 371, as amended, Burns Indiana Statutes Annotated, Code Edition § 22–2–5–1 *et seq.* (1992 ed. and 1994 Cum. Supp.) (hereinafter cited to "Indiana Code"), for damages, attorneys fees, and costs, alleging that the defendant failed to pay wages owed to her. The findings and conclusions of the Court follow:

1. The Court has jurisdiction to adjudicate the plaintiff's claims under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367.

2. The defendant operates a group home for Indiana juveniles from Johnson County and surrounding counties in Indiana. It serves only youths from the state of Indiana. Its primary objectives are to provide temporary shelter and care to troubled youths varying in age from six to nineteen years of age who are referred by juvenile courts or county agencies, including welfare departments and probation departments.

3. The defendant is a not-for-profit corporation organized under the laws of the state of Indiana and is a tax-exempt organization under 26 U.S.C. § 501(c)(3). The home does not charge its residents or their parents for its services. During the plaintiff's employment, the defendant derived its income from Indiana counties in the nature of *per diem* payments. It also received other public agency and private grants or contributions. The defendant is not a public agency of any state, county, or local government.

4. The plaintiff was employed as a houseparent by the defendant from May 7, 1990 until July 16, 1990. She was not paid overtime compensation during or after her employment for hours worked in excess of forty hours per workweek.

5. As a houseparent, plaintiff was required to spend two or three consecutive days and nights, including overnight, on the defendant's premises. The plaintiff's duties as a houseparent included supervising the life of the residents, purchasing food and supplies for the house, housekeeping and maintenance, laundry, supervising child care workers, and maintaining records. There was no claim of exemption from the F.L.S.A.

6. During her employment, the plaintiff purchased food and other supplies necessary for the care of the defendant's residents at the following local establishments: Wal–Mart and Marsh Supermarket in Franklin; Sam's Wholesale Club and Greenwood Park Mall in Greenwood; and Cub Foods in Indianapolis. She did not place orders to be filled by out-of-state businesses with these local retail establishments; she made the purchases by walking through the stores and choosing items off the shelves. Some items purchased by the plaintiff for the defendant had moved in interstate commerce before arriving at the point of purchase.

7. During the period of the plaintiff's employment, the defendant received commodities from the national government.

8. Title 29, U.S.C. § 216(b) provides, in part:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Title 29, U.S.C. § 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

9. Under the F.L.S.A., an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee ..." and an employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(d) and (e)(1).

10. At all relevant times, the defendant was an "employer" and employed the plaintiff, who was an "employee", as those terms are defined in the F.L.S.A. None of the exceptions provided in 29 U.S.C. § 203(e)(2), (3), or (4) apply.

11. Under the F.L.S.A., the defendant was required to pay overtime compensation to the plaintiff during her employment if either of the following conditions existed:

    1. The plaintiff was "engaged in commerce or in the production of goods for commerce", or

2. The defendant was an "enterprise" "engaged in commerce or in the production of goods for commerce", regardless of whether the plaintiff was so engaged.

29 U.S.C. § 207(a)(1).

■■■■ 12. In enacting the F.L.S.A., Congress did not exercise its full Commerce Clause power. *Maryland v. Wirtz,* 392 U.S. 183, 190–91, 88 S.Ct. 2017, 2021, 20 L.Ed.2d 1020 (1968); *McLeod v. Threlkeld,* 319 U.S. 491, 493, 63 S.Ct. 1248, 1249–50, 87 L.Ed. 1538 (1943); *A.B. Kirschbaum Co. v. Walling,* 316 U.S. 517, 522, 62 S.Ct. 1116, 1119–20, 86 L.Ed. 1638 (1942). Specifically, Congress intended the F.L.S.A. not to encompass activities which merely "affect" or "indirectly relate" to interstate commerce. *McLeod,* 319 U.S. at 493–94, 63 S.Ct. at 1250; *Higgins v. Carr Bros. Co.,* 317 U.S. 572, 573, 63 S.Ct. 337, 338, 87 L.Ed. 468 (1943); 29 C.F.R. § 776.9 (Department of Labor's interpretation of the Act).[1] In the 1961 and 1966 amendments, Congress exercised more of its Commerce Clause powers by extending the Act's coverage to employees not themselves engaged in commerce or the production of goods for commerce but who are employed in enterprises so engaged. 29 U.S.C. § 207(a)(1). Since such employees affect commerce through their effect on their enterprises, Congress could constitutionally include them within the Act's coverage. *State of Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). The 1974 amendments to 29 U.S.C. § 203(s)(1)(A)(i) have been interpreted as a further extension of the Act's coverage to activities of enterprises which merely affect commerce. *See Radulescu v. Moldovan,* 845 F.Supp. 1260 (N.D.Ill.1994).

■■■ 13. The plaintiff was not employed in "an enterprise engaged in commerce or in the production of goods for commerce". 29 U.S.C. § 207(a)(1).

a. The Act defines the above terms:

(r)(1) "Enterprise" means the related activities performed (either through uni-

fied operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements....

(2) For purposes of paragraph (1), the activities performed by any person or persons—

(A) in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit), or

(B) in connection with the operation of a street, suburban or interurban electric railway, or local trolley or motorbus carrier, if the rates and services of such railway or carrier are subject to regulation by a State or local agency (regardless of whether or not such railway or carrier is public or private or operated for profit or not for profit), or

(C) in connection with the activities of a public agency, shall be deemed to be activities performed for a business purpose.

(s)(1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that—

(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive or excise taxes at the retail level that are separately stated);

---

1. The Department of Labor's regulations interpreting the Act are "entitled to considerable weight in construing the Act". *Tony and Susan*

*Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 297, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985).

**(B)** is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit); or

**(C)** is an activity of a public agency.

29 U.S.C. § 203(r) and (s).

■■ b. Unless it engages in commercial activities in competition with private entrepreneurs or qualifies as one of the organization listed in 29 U.S.C. § 203(r)(2), a nonprofit charitable organization is not an "enterprise" under § 203(r) because it is not conducted for a "business purpose". So declares the Supreme Court, *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), the Secretary of Labor, 29 C.F.R. § 779.214 (1994); *Wagner v. Salvation Army*, 660 F.Supp. 466, 467 (E.D.Tenn.1986); Defendant's Exhibit H, and the legislative history of the Act, S.Rep. No. 1744, 86th Cong., 2nd Sess., 28 (1960). Unless one of the two circumstances obtain, non-profit eleemosynary organizations which provide shelter and care to troubled youth are not engaged in a "business purpose" under the Act. *Segali v. Idaho Youth Ranch, Inc.*, 738 F.Supp. 1302 (D.Idaho 1990).

c. As a not-for-profit corporation providing temporary shelter and care to troubled youths, the defendant is an eleemosynary, charitable organization.

d. The defendant was not engaged in commercial activities in competition with private entrepreneurs. No allegation was made or evidence introduced to such effect.

e. The defendant does not qualify as any of the organizations or activities listed in 29 U.S.C. § 203(r)(2). No allegation was made or evidence introduced to such effect and the fact was conceded by the plaintiff. (Plaintiff's Proposed Findings of Fact, Conclusions of Law, ¶¶ 10, 11).

f. Because the defendant was not engaged in activities performed for a business purpose, it was not an enterprise under the Act.

14. The plaintiff was not "engaged ... in the production of goods for commerce".

■■ 15. If the plaintiff produced goods, she did not do so "for commerce".

a. Commerce is defined by the Act as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

b. The Department of Labor has declared its interpretation of the "for commerce" requirement:

> Goods are produced "for" such commerce where the employer intends, hopes, expects, or has reason to believe that the goods or any unsegregated part of them will move (in the same or in an altered form or as a part or ingredient of other goods) in such interstate or foreign commerce. If such movement of the goods in commerce can be reasonably anticipated by the employer when his employees perform work defined in the Act as "production" of such goods, it makes no difference whether he himself, or a subsequent owner or possessor of the goods, put the goods in interstate or foreign commerce. The fact that goods do move in interstate or foreign commerce is strong evidence that the employer intended, hoped, expected or had reason to believe that they would so move.

29 C.F.R. § 776.21 (1994) (footnotes omitted). *See Alstate Construction Co. v. Durkin*, 345 U.S. 13, 15–16, 73 S.Ct. 565, 567, 97 L.Ed. 745 (1953); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 121, 66 S.Ct. 925, 931, 90 L.Ed. 1114 (1946) (test is whether producers had "reasonable grounds to anticipate that material quantities of their production would move interstate").

c. There was no allegation or evidence that the plaintiff or the defendant introduced goods into interstate commerce or intended or anticipated that any goods, which the plaintiff might have produced, would move in interstate commerce. The plaintiff claimed that she prepared and served food which had

previously travelled in interstate commerce and cleaned the defendant's facility with materials which had previously moved in interstate commerce, but there was no claim or evidence that she or the defendant intended or anticipated that any of results of her "production" with these goods would move further in interstate commerce.

16. The plaintiff did not engage in "production" under the Act.

a. Production is defined as,

... produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State.

29 U.S.C. § 203(j).

b. 'Producing', 'handling', or 'working on' goods means more than merely touching, moving, or using them. The meaning of "production" under the Act's employee-coverage provision is limited to the economic processes of affecting the character of goods in order to put them into a state to enter interstate commerce. The objective of the production is to introduce the goods into the stream of interstate commerce. "Production", as defined under the Act, does not include a producer's consumption or use of goods. The focus of the Act is prospective, to the further movement of the goods, not retrospective, to the producer's receipt of the goods.

The Supreme Court considered the scope of § 203(j) in *Western Union Telegraph Co. v. Lenroot*, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414 (1945). In that case, the United States argued that telegram deliverers were covered under the Act because they "handled" and "worked on" the messages they delivered, and thus, "produced" them.

The Government contends that in defining "produced" the statute intends "handled" or "worked on" to mean not only handling or working on in relation to *producing or making an article ready to enter interstate transit,* but also includes the handling or working on which accomplishes the interstate transit or movement in commerce itself. If this construction is adopted, every transporter, transmitter, or mover in interstate commerce is a "producer" of any goods he carries. But the statute, while defining "produced" to mean "handled" or "worked on", has not defined "handled" or "worked on." These are terms of ordinary speech and mean what they mean in ordinary intercourse in this context. They serve a useful purpose when read to related to *all steps, whether manufacture or not, which lead to readiness for putting goods into the stream of commerce.* One who packages a product, or bottles a liquid, or labels, or performs any number of tasks incidental to preparing for shipment might otherwise escape the Act, for in a sense he neither manufactures, produces, or mines the goods. *We are clear that "handled" or "worked on" includes every kind of incidental operation preparatory to putting goods into the stream of commerce.*

If we go beyond this and assume that handling for transit purposes is handling in production, we encounter results which we think Congress could not have intended. ... Its artificial definition, if construed to mean that *"handling" and "worked on" catches up into the category of production every step in putting the subject of commerce in a state to enter commerce,* is a sensible and useful one, not at odds with any other section of the Act.

*Id.,* 323 U.S. at 503–04, 65 S.Ct. at 342 (emphases added). *See* 29 C.F.R. § 776.16.

c. There is no evidence that the plaintiff performed work on any goods in order to affect their character or state for the purpose of introducing them into the stream of interstate commerce. She was therefore not engaged in the production of goods under the Act.

17. The plaintiff was not "engaged in commerce" under the Act.

a. The guiding principle in defining the scope of this phrase is the intent of Congress to regulate only activities constitut-

ing interstate commerce, not activities merely affecting commerce. *McLeod*, 319 U.S. at 497, 63 S.Ct. at 1251 ("The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it."). Congress intended to leave local commerce outside the scope of the Act. *Walling v. Jacksonville Paper*, 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460 (1943); *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 315–16, 80 S.Ct. 739, 743, 4 L.Ed.2d 753 (1960) ("In *Kirschbaum Co. v. Walling*, *supra*, we found that limits on coverage cannot be understood merely in terms of the social purposes of the Act, in light of which any limitations must appear inconsistent. For the Act also manifests the competing concern of Congress to avoid undue displacement of state regulation of activities of a dominantly local character.").

■ b. Our interpretation of the scope of the Act's individual employee coverage is not governed by the expansive interpretations given to its enterprise coverage provision. The 1961 and 1966 amendments adding enterprise coverage to the Act were not intended to alter the meanings of the existing phrases "engaged in commerce" or "engaged in the production of goods for commerce". *See* S.Rpt. No. 145, Apr. 10, 1961, *reprinted in* 2 1961 U.S.C.C.A.N. 1620, 1644, 1662–63. The Department of Labor so interprets the amendments:

> The term "engaged in commerce or in the production of goods for commerce," as used in the section 3(s) of the Act [§ 203(s) ] in reference to employees who are so engaged is the same as the term which has been used in the Act for many years. The statutory definitions of these terms are set forth in §§ 779.12 through 779.16. The interpretive bulletin on general coverage [ (]part 776 of this chapter) contains the Division's interpretations as to which employees are "engaged in commerce or in the production of goods for commerce." These interpretations are equally applicable under section 3(s) in de-

termining which employees are "engaged in commerce or in the production of goods for commerce" within the meaning of this section.

29 C.F.R. § 779.239. Likewise, the incorporation of § 203(j)'s existing language defining "production" into § 203(s)'s definition of an "enterprise engaged in commerce or the production of commerce" was not intended to broaden the existing scope of these terms. 29 C.F.R. §§ 779.240(b), 779.242:

> The term "handling * * * or otherwise working on goods" used in section 3(s) is substantially the same as the term used since 1938 in section 3(j) of the Act. Both terms will therefore be considered to have essentially the same meaning.... Thus, the activities encompassed in the term "handling or in any other manner working on goods" in section 3(s) are the same as the activities, encompassed in the similar term in section 3(j), by which goods are "produced" within the meaning of the Act.... An employee will be considered engaged in "handling * * * or otherwise working on goods," within the meaning of section 3(s), only if he performs the described activities on goods that "have been moved in or produced for commerce by any person."
>
> *       *       *       *       *       *
>
> For the purpose of section 3(s), goods will be considered to "have been moved * * * in commerce" when they have moved across state lines before they are handled, sold, or otherwise worked on by the employees.

As indicated above, the definition of "produced" in § 203(j) does not encompass the mere use, physical touching, or consumption of goods which have travelled in interstate commerce, but requires that the employees perform work on the goods with the objective of preparing them for introduction into the stream of interstate commerce. The amendment's new qualification that the goods which an enterprise produces "have been moved in or produced for commerce", § 3(s), did not alter the requirement that the production be geared toward preparing the goods for introduction into the stream of interstate commerce.

The 1974 amendment has been widely interpreted as significantly expanding the Act's coverage, encompassing enterprises which merely use or consume, for any commercial or non-commercial purpose, goods which have moved in interstate commerce. Because the definition of an "enterprise" subsumes virtually all circumstances under which individual employee coverage would also be found, most modern cases speak of the Act's coverage expansively. As found above, however, the defendant does not qualify as an enterprise due to its failure to satisfy the requirement of a "business purpose" which is not present under the provision for individual employee coverage. Therefore, because the 1974 amendment affected definitions applicable only to enterprise coverage, § 203(s)(1)(A)(i), issues relating to the correctness and applicability of the "use of goods" standard are avoided in this case because it is governed exclusively by the provisions and interpretations of the Act applicable to individual employee coverage.

c. For an employee to be "engaged in commerce" she must be either directly participating in the actual movement of persons or things in interstate commerce or doing work directly supporting the movement of goods in interstate commerce. An employee may participate in the actual movement of interstate commerce by working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or by regularly using the instrumentalities of interstate commerce in her work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel. The second alternative for coverage—performing work supporting or directly related to an instrumentality of interstate commerce—is characterized by activities such as repairing and maintaining interstate roads, railroads, and telephone lines. The test for activities falling within this second alternative is conceived less in terms of how essential the activity is to the instrumentality of commerce in a "but for" sense, and more in terms of "remoteness" from actual interstate commerce, as informed by the purpose of the Act to leave local activities uncovered. *H.B. Zachry*, 362 U.S. at 319, 80 S.Ct. at 745; *Alstate Construction*, 345 U.S. at 16, 73 S.Ct.

at 567; *McLeod*, 319 U.S. at 497, 63 S.Ct. at 1251 ("The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so clearly related to the movement of the commerce as to be a part of it"); *Beneficial Finance Co. of Wisconsin v. Wirtz*, 346 F.2d 340, 343 (7th Cir.1965) ("The guiding principles announced in Vollmer [*Mitchell v. C.W. Vollmer & Co., Inc.*, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955)] have been often utilized and given effect by the Courts. In that case, the Court (page 429, 75 S.Ct. page 862) stated, 'The test is whether the work is so directly and vitally related to the functioning of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity.'"); *Mitchell v. S.A. Healy Co.*, 284 F.2d 39, 42 (7th Cir.1960); 29 C.F.R. §§ 776.9 through 776.12.

d. Employees are "engaged in commerce" under the Act only if they are participating in the instrumentalities of *interstate* commerce, the movement of persons or things across state lines. Although the Act is limited to interstate commerce, its coverage reaches to the furthest extent of the channels of that commerce. The extent, or end, of an interstate journey is determined by the "practical continuity of movement of the goods until they reach the customers for whom they are intended." *Jacksonville Paper*, 317 U.S. at 568, 63 S.Ct. at 335. A temporary pause in the transportation or delivery process for convenience's sake does not terminate the interstate journey. *Id.* However, when goods reach the customer for whom they were intended—as defined by the totality of the circumstances, *e.g.*, the contract made, where the order originated, whether further sales have been made, the custom or practice in the trade—then the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act. *McLeod*, 319 U.S. at 494, 63 S.Ct. at 1250 ("So handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle

goods after acquisition by a merchant for general local disposition are not."); *Higgins, supra,* 317 U.S. 572, 63 S.Ct. 337 (night warehouse employee who put up orders, loaded trucks, and made deliveries to local retail stores for a wholesaler who purchased the goods in- and out-of-state, shipped them to the warehouse, then distributed them in-state was not covered under the Act); *Walling v. Goldblatt Bros.,* 128 F.2d 778, 783 (7th Cir.1942), *cert. denied,* 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130 (1943).

e. The food and supplies the plaintiff obtained as part of her duties to care for the residents of the defendant's group home were purchased at local retailers by selecting the items off the shelves. No orders or requests for items were placed with the retailers. When the goods reached the local retailers, their interstate journey had ended; their further movement by the plaintiff to the defendant's facility did not constitute interstate commerce.[2] The plaintiff did not make regular or recurrent use of interstate telephone calls, mail, or other instrumentalities or channels of interstate commerce in the performance of her duties. The fact that any goods or materials used by the defendant in the performance of her duties had moved in interstate commerce is irrelevant to the question of whether she was engaged in commerce. The plaintiff did not participate in the movement of interstate commerce or in any activity essential or directly related thereto. Any effect the plaintiff's performance of her duties had on interstate commerce during the time of her employment with the defendant was too remote to qualify as engagement in commerce under the Act.

18. The claim that the defendant received federal food subsidies or commodities or was engaged in domestic services, is irrelevant to whether she was engaged in commerce or the production of goods for commerce or was employed in an enterprise so engaged.

19. Because the plaintiff was neither engaged in commerce or the production of goods for commerce, nor employed in an enterprise engaged in commerce or the production of goods for commerce, she was not covered under the F.L.S.A. and was not entitled to overtime compensation.

20. The sole basis for the plaintiff's claim for damages under Indiana Code § 22-2-5-1, *et seq.,* is the failure of the defendant to pay F.L.S.A.-mandated overtime compensation. The findings and conclusions above that she was not entitled to overtime compensation also dispose of her claims under state law.

21. In addition, if the plaintiff were entitled to overtime compensation under the F.L.S.A., she would be exempt from the provisions of Indiana Code § 22-2-5-2 under § 22-2-5-1.1.

22. The defendant is not liable to the plaintiff for unpaid wages. The plaintiff takes nothing by way of her complaint.

23. The defendant shall recover its costs from the plaintiff under Fed.R.Civ.P. 54(d)(1).

24. Any motion for recovery of attorneys fees by the defendant shall be made within twenty days of the date of entry of Judgment.

---

**2.** The customers for whom the out-of-state goods were travelling in their interstate journey were the local retailers. No contracts, orders, or requests were made for the goods by the plaintiff, the defendant, or the group home's residents and there was no evidence of any informal understanding, custom, or practice connecting the retailers to these parties. There wasn't evidence of the retailers responding the anticipated needs of these parties. There was simply no evidence of a practical continuity of movement of commerce through the retailers to the plaintiff, the defendant, or the defendant's residents.