Douglas **SEGALI** and Anna Segali, husband and wife, on behalf of themselves, and all others similarly located, Plaintiffs,

v.

The **IDAHO YOUTH RANCH, INC.,** an Idaho corporation, Lowell C. Jenson, individually, David R. Murray, individually, jointly and severally, Defendants.

**Civ. No. 87–1310.**

United States District Court, D. Idaho.

May 18, 1990.

Thomas G. Maile, IV, Boise, Idaho, for plaintiffs.

Richard E. Weston, Weston & Richardson, Boise, Idaho, for defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RYAN, Chief Judge.

### I. FACTS & PROCEDURE

The above-entitled action arises under the Fair Labor Standards Act of 1938 (FLSA), as amended (29 U.S.C. § 201 *et seq.*). Plaintiffs, Douglas and Anna Segali, former employees of the Idaho Youth Ranch, commenced this action on October

20, 1987, principally for the purpose of recovering unpaid overtime compensation under the FLSA.

Pursuant to 29 U.S.C. § 216(b), Mr. and Mrs. Segali brought this action on behalf of themselves and all other similarly situated Idaho Youth Ranch employees.[1] Plaintiffs' prayer for relief requests unpaid wages, overtime compensation, liquidated damages, interest, costs and reasonable attorney's fees.[2]

In their complaint, Mr. and Mrs. Segali allege that, "[d]uring the period from on or about October, 1983, to April 1986, the Plaintiffs were employed by the Defendant The Idaho Youth Ranch [on a monthly salaried basis] in a variety of capacities, to wit: recreation aid, counselors, house-parents...." Complaint and Demand for Jury Trial, filed Oct. 20, 1987, ¶ VIII at 3. Apparently, in addition to receiving salaries during their tenure with the Idaho Youth Ranch, Douglas and Anna Segali lived at the ranch in one of the homes which housed boys staying at the ranch. Hence, while they were not supposed to be on duty 24 hours a day, seven days a week, it appears that they spent the majority of their time on the premises—since they not only worked there, but lived there. Plaintiffs have brought this action claiming that they are entitled to additional compensation because during their employment they worked a number of work weeks which exceeded 40 hours, and defendants did not pay them overtime or minimum wages as required under 29 U.S.C. § 207(a).

In their Answer, defendants admit, inter alia, that "[d]uring the period of plaintiffs' employment, plaintiffs worked for a number of work weeks longer than forty hours and were not paid overtime compensation for such work in excess of forty hours at a rate of not less than one and one-half times the regular rate at which they were employed...." Answer, filed Dec. 10, 1987, ¶ VII at 3. And, defendants assert the following affirmative defenses:

(1) That the Idaho Youth Ranch and the other individually named defendants "are exempt from Section 7 of the overtime provisions" of the FLSA, since they are "not a 'covered enterprise' within the meaning of [Sections 203(r)(1) and 203(s)(4) ] of the Fair Labor Standards Act, *and* at all times material herein none of defendants' employees, including plaintiffs, [were] individually engaged in interstate commerce or [were] producing goods for interstate commerce." Answer, filed Dec. 10, 1987, at 3–4 (emphasis added).

(2) That during the period of their employment, plaintiffs performed duties as executive administrative and professional employees, and are thereby exempt from the overtime provisions of the FLSA under Section 13(a)(1) of that Act.

(3) That, if the court finds overtime is due, any claims for overtime pay which occurred more than two years prior to October 20, 1987, are barred by the two-year statute of limitations contained in the Portal–to–Portal Act, 29 U.S.C. § 255.

On June 26, 1989, plaintiffs filed a Motion for Summary Judgment in which they requested this court to: (1) find the Idaho Youth Ranch to be a school under the FLSA and enter "[j]udgment against the Defendants on the issue of liability," (Plain-

---

1. While the plaintiffs maintain this action on behalf of themselves and others, it is noteworthy that the pleadings and the memoranda submitted in support of pending motions speak to circumstances which solely pertain to Mr. and Mrs. Segali during their employment at the Idaho Youth Ranch.

2. At the time of bringing this action, plaintiffs indicated that the amounts due to them as unpaid wages and overtime compensation were "currently not exactly ascertainable due to the fact that Plaintiffs do not have exact records at this time relating to their pay." Complaint and Demand for Jury Trial, filed Oct. 20, 1987, ¶ XI

at 4. The Complaint stated further that, "[p]laintiffs propose to obtain such information by appropriate discovery proceedings ... and will then amend their pleadings herein to fort[h] the amount due them." *Id.* at ¶ XI [sic] (should be XII). To date, plaintiffs have not amended their pleadings. However, in their Motion for Summary Judgment, they allege that the minimum amount due to the class of employees involved is $14,393.64, and, as to Mr. and Mrs. Segali in particular, Idaho Youth Ranch allegedly owes $3,101.15. *See* Plaintiffs' Memorandum Brief in Support of Motion for Summary Judgment, filed June 26, 1989, at 16.

tiffs' Motion for Summary Judgment, filed June 26, 1989, at 1) and (2) enter "[j]udgment against the Defendants on the issue of damages pursuant to a certain written agreement ..." (i.e., the "Waiver of Statute of Limitation" signed by Neil Howard, President of the Idaho Youth Ranch). *Id.*

Thereafter, on August 21, 1989, defendants filed a Motion for Summary Judgment in which they requested this court to find: (1) that the Idaho Youth Ranch, Inc., is not an "enterprise" as defined in 29 U.S.C. §§ 203(r) and 203(s) of the Fair Labor Standards Act; (2) that the Idaho Youth Ranch, Inc., is not engaged in the operation of [an] "elementary or secondary school" within the meaning of 29 U.S.C. §§ 203(r)(1) or 203(s)(5); (3) that the Idaho Youth Ranch, Inc., is not a secondary or elementary school under the laws of the State of Idaho; (4) that plaintiffs' claims for any back wages allegedly incurred prior to October 20, 1985, [are] barred by the two-year statute of limitations contained in the Portal–to–Portal Act; and (5) that the "Waiver of Statute of Limitation" document dated August 29, 1986, is not a valid and enforceable document.

On April 16, 1990, a hearing on all pending motions was held before this court. At that time, counsel principally addressed pending cross-motions for summary judgment.[3] Having thoroughly considered the statements of counsel along with the memoranda, affidavits and exhibits in the record, and based on the analysis to follow,

the court has determined that defendants' Motion for Summary Judgment should be granted.

## II. ANALYSIS

### A. *Summary of Cross–Motions*

1. Plaintiff's Motion for Summary Judgment.

It is apparently undisputed that as of April 15, 1986, both Douglas and Anna Segali had terminated their employment with the Idaho Youth Ranch. Based on the record, it appears that shortly after leaving the Idaho Youth Ranch, Mr. and Mrs. Segali contacted the Department of Labor. Next, the Department of Labor contacted the defendants and conducted an investigation to determine whether any violations of the FLSA had taken place. Because Neil Howard was President of the Idaho Youth Ranch, he dealt with the Department of Labor representatives. According to Mr. Howard's affidavit, from early 1986 through February 1987, he interacted with various Department of Labor representatives regarding the Youth Ranch's liability for failure to pay overtime in compliance with the FLSA. *See* Affidavit in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, at 6–7.

During such interactions, several letters were drafted and a statement entitled "Waiver of Statute of Limitation" was

---

3. Also pending, at the time of the hearing, was plaintiffs' motion to strike certain exhibits attached to the Affidavit of Neil Howard, President and Executive Director of Idaho Youth Ranch. Mr. Howard's affidavit was submitted in support of defendants' Motion for Summary Judgment and in opposition to plaintiffs' Motion for Summary Judgment. *See* Affidavit [of Neil Howard] in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989.

In *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 595 F.Supp. 1442 (N.D.Ga. 1984), the district court stated the following:
[A] motion to strike is only appropriately addressed toward matters contained in the pleadings, Fed.R.Civ.P. 12(f), and affidavits submitted in support of a motion are clearly not within that category. Regardless of the

practice followed in other forums, this court does not sanction the use of a rule 12(f) motion for the advancement of objections to an affidavit filed in support of a motion. *It is sufficient for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in its consideration of the motion.*
*Id.* at 1443 (citations omitted) (emphasis added). Persuaded by this reasoning, and in light of the record as a whole, this court finds itself capable of giving appropriate weight to the items at issue. In so finding, this court has construed plaintiffs' motion to strike as an objection and has noted such objection in considering the merits of the cross-motions for summary judgment.

signed by Mr. Howard. Although the Youth Ranch has heard nothing from the Department of Labor since February 1987, correspondence which took place between early 1986 and February 1987 is very significant to this case. *See* Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibits 5, 6, 7, 9, 10 and 11.

Plaintiffs ask this court to accord great weight to a letter dated August 20, 1986, from Stanley Simpson, Area Director for the Employment Standards Administration Wage and Hour Division of the Department of Labor and to a letter dated December 5, 1986, from Wilbur Olson, Assistant Regional Administrator for the Wage and Hour Division. *Id.* at Exhibits 9 and 11. Moreover, plaintiffs request this court to uphold and enforce the "Waiver of Statute of Limitation" which was signed by Mr. Howard at the request of a Department of Labor Representative named Mr. McWinn. *Id.* at Exhibit 10.

Indeed, plaintiffs claim that there "is ample evidence in the record to demonstrate that not only has the Department of Labor considered the issue and concluded the [Idaho Youth Ranch] met the definition of a school, but that the [Idaho Youth Ranch] itself has advertised itself in that role." Plaintiffs' Memorandum Brief in Support of Motion for Summary Judgment, filed June 26, 1989, at 13. In terms of such advertising, plaintiffs point to a pamphlet produced by defendants which states:

*Education*—Children who are able to attend public schools. However, about 65% of the youngsters at the Ranch are five and six grade levels behind their age group. For them the Ranch, in cooperation with the Minidoka School District, has a special school taught by special education teachers. [I]n the Ranch School individual programs are designed for each student; many boys have advanced two to three grade levels while enrolled.

*See* Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibit 16 to Deposition of Neil Erin Howard, dated May 6, 1988.

Plaintiffs emphasize, and defendants concede, that the Idaho Youth Ranch entered into contracts with the State of Idaho to provide "education, in accordance with the rules and regulations established by the State Board of Education as provided by Section 33–2003, Idaho Code, as amended, for exceptional students residing in this school district...." *See* Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibit 13 to Deposition of Neil Erin Howard dated May 6, 1988.

In addition to requesting this court find that the Idaho Youth Ranch is a school and therefore liable for unpaid overtime under the FLSA, the second aspect of plaintiffs' Motion for Summary Judgment requests this court to enter "[j]udgment against the Defendants pursuant to a certain written agreement by Defendant, pursuant to the [FLSA] as a matter of law." Plaintiffs' Motion for Summary Judgment, filed June 26, 1989, at 1. The "written agreement" to which the plaintiffs refer is an item entitled "Waiver of Statute of Limitation." The "waiver" states the following:

In consideration of the Secretary of Labor withholding institution of legal proceedings under Sec. 17 and/or 16(c), Idaho Youth Ranch, Inc., an Idaho Corporation, agrees to waive any & all defenses relating to statutes of limitation which might otherwise be available to it under the Portal–to–Portal Act (sec. 6 or otherwise) in any legal proceedings instituted pursuant to sections 16(b), 16(c) and/or Sec. 17 of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*). The purpose of this waiver is to allow more time for Idaho Youth Ranch, Inc. to appeal to higher administrative authorities the back wage finding of Compliance Officer J.D. McWinn (copy attached hereto). If no settlement satisfactory to the Secretary is reached, he may at any time (in his sole discretion) file suit for any relief he deems proper, including all relief available under the Fair Labor Standards Act. However, if Idaho Youth Ranch, Inc. does not prevail in its administrative appeals, it is understood that it will within a reasonable time (not over 6 months

later) pay the back wages listed on the attached form WH–56 as modified by the deletion of the back wages during summer periods. This refers to the approximate periods as follows: 5/25/85 through 8/25/85. It is understood that the administrative appeal period will not extend more than three months from date hereof.

> Signed: Idaho Youth Ranch, Inc. by Neil Howard, its President dated 8/29/86

*See* Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibit 10 to Deposition of Neil Erin Howard dated May 6, 1988.

As mentioned above, Mr. Howard was first contacted by the local enforcement officer, Mr. McWinn, from the Department of Labor at the request of Mr. and Mrs. Segali. During the course of his meetings with Mr. McWinn, Mr. Howard signed the "waiver" set forth above. At the time of signing the "waiver," however, it is notable that Mr. Howard was not represented by counsel. Moreover, as indicated in his deposition, Mr. Howard perceived the "waiver" to minimize the threat of a lawsuit on a matter which he believed did not warrant such. In reference to the "waiver," Mr. Howard has stated:

> A. This is a document that Mr. McWinn brought to me and said I had to sign or I was going to court. And at that time, which was back in August of '86, I was still not in agreement with him that he was interpreting the laws any better than I was.
>
> . . . .
>
> A. And he said, "Well, the only way you can stop from going to court right now is to sign a Waiver of Statute of Limitations." And I said, "Well, I need more time." And he said, "Well, it's going to court." I mean, he just—it was threatening. I mean, this is government to me. [These] are the guys who control our lives and have all the power, and so I signed it. And I said, "I need more time."

*Id.,* Deposition of Neil Erin Howard dated May 6, 1988, at 58.

To fully represent plaintiffs' posture on this motion for summary judgment, the court determined that the "waiver" argument warranted some discussion. However, the court fully recognizes that, because the undisputed facts and the law relevant to this case dictate a finding that the Idaho Youth Ranch is not an elementary and/or secondary school as contemplated under the FLSA, and therefore not an "enterprise," the court need not address the legal effect of the "Waiver of Statute of Limitation." Indeed, upon finding that the Idaho Youth Ranch is not subject to the provisions of the FLSA, the statute of limitation issues, and waiver thereof becomes moot.

> 2. Defendants' Motion for Summary Judgment.

Preliminarily, the court notes that, as set forth earlier, defendants' Motion for Summary Judgment is premised on five grounds. However, because grounds one, two and three actually contemplate the same legal bases for entering summary judgment, those shall be considered together. And, having found those grounds to be dispositive, the court shall not address issues bearing on the fourth and fifth grounds for the motion regarding the statute of limitations and "waiver" thereof.

Throughout their motion, defendants emphasize that the "objective of the ... Idaho Youth Ranch, is to care for, treat and nurture, dependent, abused and neglected children." Memorandum in Support of Defendants' Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, at 13. Furthermore, defendants maintain that the Idaho Youth Ranch is not in competition with any businesses or profit-making corporations. Indeed, defendants contend that those enterprises covered by the FLSA do not include eleemosynary organizations such as the Idaho Youth Ranch. Defendants do, however, acknowledge that there are two situations where an eleemosynary organization may be covered by the FLSA. The first situation occurs where the eleemosynary organization

or corporation operates a secondary or elementary school as defined under state law. The existence or non-existence of that situation is currently at issue before this court on plaintiffs' Motion for Summary Judgment and defendants' cross-Motion for Summary Judgment. The second situation which may come into play in a case like this, occurs where the eleemosynary organization is engaged in business operations which are competing in the private profit-making market.

In *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), the United States Supreme Court considered the circumstances under which a nonprofit religious organization engaged in eleemosynary activities should be subjected to the overtime provisions of the FLSA. Although the Court found the Alamo Foundation to be covered by the FLSA, defendants maintain that the circumstances present at the Idaho Youth Ranch are distinguishable. In the *Alamo* case, the foundation derived its income from the operation of a number of commercial businesses, which included service stations, retail clothing and grocery outlets, hog farms, roofing and electrical construction companies, a record keeping company, a motel, and companies engaged in the production and distribution of candy. *Id.* 471 U.S. at 292–94, 105 S.Ct. at 1956–57, 85 L.Ed.2d at 282–83. Unlike the Alamo Foundation, however, defendants argue that the Idaho Youth Ranch undisputedly derives 90 percent of its funds from state agencies and is not in competition with any private sector profit-making organizations. Accordingly, defendants maintain that the ranch is not being operated for a "business purpose" and should not be considered an "enterprise" within the meaning of 29 U.S.C. § 203. Moreover, to the extent defendants derive income from the Idaho Youth Ranch Thrift Store or from leases of landholdings to farmers, such income is negligible.

### B. *Analysis of Pending Motions*

#### 1. Generally.

Clearly, the threshold question for this court as it considers the cross-motions for summary judgment, is whether or not the Idaho Youth Ranch is subject to the provisions of the Fair Labor Standards Act. And, given that it is largely uncontroverted that the Idaho Youth Ranch is not a commercial enterprise, the focus for this court must be on whether or not the Idaho Youth Ranch is subject to the FLSA because it is an "elementary school" or a "secondary school."

From the beginning, Mr. Howard has expressed his belief that the Idaho Youth Ranch should not be considered a school under the FLSA. In part, he bases this belief on the fact that, in California, in order for a facility such as the Idaho Youth Ranch to be subject to the FLSA, "the *primary purpose* of the organization has to be education in order to be qualified as a school." Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibit 10 to Deposition of Neil Erin Howard dated May 6, 1988, at 62 (emphasis added). Although not dispositive, that position is entirely consistent with the position taken in the Ninth Circuit. *See Marshall v. Rosemont, Inc.*, 584 F.2d 319 (9th Cir.1978), *infra* at 1309.

During his deposition in this case and throughout these proceedings, Mr. Howard has fully acknowledged corresponding with the Department of Labor, but has stated that he hasn't accepted their findings because he "want[s] a definitive answer from somebody in power rather than compliance officers interpreting the law." Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, Deposition attachment of Neil Erin Howard dated May 6, 1988, at 68–69. Moreover, he has stated:

> [Y]ou know, I'm not being hard in this, but, you know, you got a letter from a guy like Simpson that says, "While we have not been able to determine, we're determining you're a school," you see? And that's part of the problem.

*Id.* at 69. At the time of Mr. Howard's deposition, the following question was asked and answered:

Q. Now, my problem here, Mr. Howard, is if you've signed a contract, or if the Idaho Youth Ranch has signed a contract indicating that they will provide education in accordance with certain code and regulations established by the State Board of Education, how is it that your position could be with the Department of Labor that you're not a school?

A. Because, again, the Department of Labor's regulations are that we are an elementary or secondary school as described by state law. What we are contracting here for is to provide educational services.

We are not an accredited school. We do not issue credits. We're doing a—the educational service component of our total program is just like any other component of the program. We provide social services. We provide counseling. We're also providing some educational services.

And we are not authorized to become a full school. The purpose of this contract is to establish a means by where the money from the department is transferred through the Minidoka School District directly to us so that we can hire and fire our own employees.

*Id.* at 77–78.

Which brings the court to the crux of the cross-motions for summary judgment pending before it. Clearly, defendants concede that in a "generic" sense, the Idaho Youth Ranch has a "school." However, to fall within the provisions of the FLSA, defendants properly maintain that the Idaho Youth Ranch must rise to the level of providing an "elementary school" and/or a "secondary school" *under Idaho state law.*

■ Unfortunately, there is no statute or judicial decision which speaks directly to the issues before the court. Nevertheless, the court finds that through a combination of authority there is more than adequate bases upon which this court can conclude that the Idaho Youth Ranch is not subject to the provisions of the FLSA.

Both parties agree that in determining whether an entity is subject to the provisions of the FLSA, one must first look to Title 29, United States Code, Section 203.

Section 203(r) defines the term "enterprise" and specifically states that:

> For purposes of this subsection, the activities performed by any person or persons—
>
> > (1) in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, *elementary or secondary school,* or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit) ...
>
> shall be deemed to be activities performed for a business purpose.

29 U.S.C.S. § 203(r) (Law.Co-op.1975) (emphasis added).

Moreover, subsection (s) of that statute further provides a definition of the term "enterprise engaged in commerce or in the production of goods for commerce," and it reads as follows:

> [A]n enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—
>
> > ....
> >
> > (4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, *elementary or secondary school,* or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)....

29 U.S.C.S. § 203(s) (Law.Co-op.1975) (emphasis added).

In light of the foregoing, subsections (v) and (w) give *some* guidance as to the mean-

ing of the terms "elementary school" and "secondary school." " 'Elementary school' means a day or residential school which provides elementary education, *as determined under State Law*." 29 U.S.C.S. § 203(v) (Law.Co-op.1975) (emphasis added). And, " 'Secondary school' means a day or residential school which provides secondary education, *as determined under State Law*." 29 U.S.C.S. § 203(w) (Law.Co-op.1975) (emphasis added).

Based upon the court's review of the law in this area, a decision by the Ninth Circuit on a similar matter seems to be controlling in this case. In *Marshall v. Rosemont, Inc.*, 584 F.2d 319 (9th Cir.1978), an action was brought by the Department of Labor against two nursery schools. The parties stipulated at the trial court level that the defendants would be subject to the provisions of the FLSA if they operated a "preschool" within the meaning of Section 203(s)(5) of the Act, and if they were subject to such, that they were in violation of its provisions. The district court held separate bench trials and, finding that neither defendant operated a "preschool" within the meaning of the Act, dismissed both complaints. The Secretary of Labor appealed and the Ninth Circuit affirmed the decision of the District Court.

In *Marshall*, the Ninth Circuit specifically acknowledged that, unlike the term "preschool," the FLSA specifically dictates that the meaning of the terms "elementary school" and "secondary school" are both to be *"determined by State Law."* *Id.* at 321 (emphasis added). Moreover, in *Marshall*, when the Ninth Circuit was unable to find any state law which more clearly defined "preschool," it noted that, "if the term is to have any meaning it must be by the Act itself, regulations enacted under the Act, or *descriptions under state law."* *Id.* (emphasis added). Ultimately, the Ninth Circuit affirmed the trial court's determination as it found that defendants could not be considered preschools under state law because they "were *primarily* engaged in the provision of day care services for infants of working mothers." *Id.* (emphasis added).

Plaintiffs claim the Idaho Youth Ranch owes them overtime under the FLSA because it constitutes an "elementary" or "secondary" school. However, to the extent the terms secondary school and elementary school are defined and/or described under Idaho state law, it is clear that the schooling offered at the Idaho Youth Ranch does not rise to the level of constituting an "elementary school" or "secondary school." Indeed, at least for purposes of accreditation, Section 33–119, Idaho Code, has specifically defined the terms "elementary school" and "secondary school" as follows:

"Secondary school" for the purposes of this section shall mean a school which, for operational purposes, is organized and administered on the basis of grades seven (7) through twelve (12), inclusive, or any combination thereof.

"Elementary school" for the purposes of this section shall mean a school which, for operational purposes, is organized and administered on the basis of grades one (1) through six (6), inclusive, one (1) through eight (8) inclusive, or any combination of grades one (1) through eight (8), inclusive.

Idaho Code § 33–119 (1981).

It is undisputed that the Idaho Youth Ranch is not organized or administered on the basis of providing grades seven through twelve as required by the secondary school classification, or providing grades one through six as required by the elementary school classification. At any given time, the Idaho Youth Ranch houses approximately 36 boys from ages eight to eighteen. Affidavit in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, at 3. It is undisputed that the boys do not receive formal academic credit for the work they do at the Ranch "school." And, it is undisputed that the program at the Ranch is not even accredited by the State Board of Education.

Notably, in *Marshall*, the Wage and Hour Administrator had even given an informal statement as to the meaning of

"preschool" and such had been set forth in a Department of Labor Publication. With respect to that "informal statement," the Ninth Circuit took the following position:

[W]hile the administrative opinions of the Department of Labor (Department) are entitled to great weight under some circumstances ... there is no conclusive mystique in its informal publications which could be substituted for an Act of Congress.... Here, the responsibility in interpretation requires an examination of the language of the Congress itself, or the record made on hearing where Congress has not spoken, or by an enactment or a definition authorized by official regulation.

*Id.* at 321 (citations omitted).

The letter from Mr. Simpson to Mr. Howard dated August 20, 1986, and the letter from Mr. Olson to Mr. Howard dated December 5, 1986, on which the plaintiffs rely heavily, certainly cannot be said to rise to the level of being administrative opinions. Therefore, this court must accord them even less weight.

In Mr. Simpson's letter, he concluded that:

While we have not been able to determine a precise definition of a school under Idaho State law, an Attorney General's opinion, No. 83–12, for purposes of the compulsory attendance law, Idaho Code 33–202, the definition is left up to the local school board to make such a determination. Floyd Merrill, Assistant Superintendent for the Minnedoka [sic] County School District, informs us that Idaho Youth Ranch is considered a school for purposes of Idaho Code 33–202. Based upon this information, it is our opinion that Idaho Youth Ranch is a school as defined by the Act and that

employees of your firm are, therefore, subject to the Act.

Affidavit of Thomas Maile in Support of Motion for Summary Judgment, filed June 26, 1989, at Exhibit 11 to Deposition of Neil Erin Howard dated May 6, 1988.

■ In reaching that somewhat attenuated conclusion, Mr. Simpson indicates that he relied on statements from Mr. Floyd Merrill, Assistant Superintendent for the Minidoka County School District. Clearly, any statements from Mr. Merrill *certainly do not amount to "state law."* And, to the extent that Mr. Merrill suggested to the Department of Labor that the Idaho Youth Ranch is a school, his view was qualified by the fact that the Youth Ranch program is considered a school *merely* for purposes of the compulsory attendance law, Idaho Code § 33–202. That qualified statement from Merrill should not be determinative. Indeed, subsequently, in a letter dated August 29, 1989, from Mr. Merrill to Neil Howard, Merrill indicates that he does *not* consider the Youth Ranch to have a "bona fide school" and views the "instructional services" offered at the ranch "as a supplement to [the] treatment program [which prepares] the boys for a more productive role in society and *entrance into the public schools.*" Affidavit in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, at Exhibit C (emphasis added).

The court finds that plaintiffs simply fail to demonstrate that the Idaho Youth Ranch should be considered a school under Idaho's state law, as contemplated by the FLSA or the Ninth Circuit. Instead, what the undisputed record overwhelmingly demonstrates is that the Idaho Youth Ranch was *not primarily* established for the purpose of providing a "secondary" or "elementary school."[4]

---

**4.** As set forth in the Articles of Incorporation, the Youth Ranch was established for the following purposes:

"1. To help growing youth, especially those who are maladjusted and delinquent in moral character, to rehabilitate themselves in such a manner as to become reliable, independent and good citizens of the United States of America.

"2. To provide functional experiences of life situations and conditions whereby youth, through an orientation of the whole self, physical, mental, social and spiritual, may achieve a well-balanced personality and character.

"3. To provide an environment and program of educational living which will develop within the individual a sense of honesty, responsibility, kindness, service to God, country and his fellow

Moreover, although certainly not determinative in interpreting the FLSA, factors addressed by the Idaho Department of Revenue and Taxation in a Declaratory Ruling issued in August 1987, are worthy of consideration. In that ruling, the Department of Revenue and Taxation held that the Idaho Youth Ranch was not an "educational institution" for the purposes of the sales tax exemption.[5]

2. The Role of the Summary Judgment Standard.

The issues presently before this court arise on cross-motions for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that summary

---

man, and a sense of what is true, honorable, just, pure, and lovely.

"4. To provide an educational program as nearly as possible in accordance and compliance with the educational standards of the State of Idaho.

"5. To provide vocational training opportunities insofar as the corporation is able.

"6. To provide moral and character education and a program of physical education.

"7. To take by purchase, gift, grant, devise or bequest, and to hold for the use and purposes of this corporation, any real or personal property whatsoever, and to sell, convey, mortgage or otherwise use the same as may be considered most conducive to the interests and purposes of this corporation."

See Affidavit in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, at Exhibit A, Articles of Incorporation.

5. In pertinent part, the Declaratory Ruling provided the following:

"QUESTION: Whether the Idaho Youth Ranch's residential and educational facility near Rupert, Idaho, qualifies as an educational institution for purposes of the sales tax exemption provided in Idaho Code § 63–36220.

"CONCLUSION: The Idaho Youth Ranch does not qualify as an educational institution, as that term is defined for sales tax exemption purposes.

"ANALYSIS: ...

"Our review of the facts relating to the educational status of the ranch and its classroom facility discloses several factors which mitigate for and several other factors which mitigate against the exemption. *Facts which mitigate in favor of the exemption include:*

1. The curriculum includes math, social science, science, reading, English, and P.E. These are clearly 'the usual branches of learning' also taught in public and private elementary and secondary schools throughout the state of Idaho.
2. Attendance at classes held at the ranch meet the mandatory school attendance requirements of Idaho Code § 63–33–202.
3. The teachers at the school are certified as special education teachers by the state of Idaho.

"*Facts which mitigate against the conclusion that the facility at the Idaho Youth Ranch is an educational institution include:*

1. Not all students who attend classes at the ranch attend the full range of instruction identified in the curriculum. Because the educational services offered are special education, the teaching is adapted to the needs and ability of each student. Therefore, although, the usual branches of learning are taught as required by the statute, not every student receives systematic instruction in the usual branches of learning.
2. The school is not accredited as an elementary or secondary school by the Idaho State Department of Education. Students participating in classes at the school receive no direct credit toward high school graduation for work performed at the school. Our interviews with personnel at the Idaho Department of Education indicate[ ] that, while the Department of Education both approves the operation of the special education activities conducted at the school at the ranch and oversees financial support for the school and approves the special education activities, the Department does not accredit the facility as a school.
3. Residents at the Idaho Youth Ranch who are able to participate in regular school environments, are transported to and educated in the public schools of the Minidoka County School District. Only students who for any reason are unable to participate in the regular public school programs participate in the special education programs offered at the Idaho Youth Ranch.
4. The Idaho Youth Ranch provides services for children residing at the school which are different from those ordinarily associated with schools offering 'systematic instruction in the usual branches of learning.' These services are related to preparing students who have been unable to function in society to be able to return to and participate as a member of society and as a student in regular schools.
5. Because the services offered at the Idaho Youth Ranch include substantial activities in addition to and different than the offering of education, it is by no means clear that the ranch can meet the statutory requirement that its income must be 'devoted solely to education' in order to qualify as an educational institution for Idaho sales tax purposes."

judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Rules of Civil Procedure, Rule 56(c) (Law.Co-op. 1987). The Ninth Circuit Court of Appeals has acknowledged that in recent years, the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prod. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). As the Ninth Circuit has expressly stated, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

Indeed, the Ninth Circuit noted two factors that are especially instructive as the court considers cross-motions in this case. First, "to withstand a motion for summary judgment, the non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original)). And, second, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more

persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original)).

3. Conclusion.

Based on the foregoing analysis, the applicable standards under Rule 56, and the direction given by the Ninth Circuit in considering these issues, this court finds that the Idaho Youth Ranch was not established *primarily* for the purpose of providing a "secondary" or "elementary" school as defined in 29 U.S.C. §§ 203(r)(1), 203(v) and 203(w).[6] Clearly, the educational instruction offered at the Idaho Youth Ranch is transitional in nature. Accordingly, the Idaho Youth Ranch may not be considered an enterprise under the FLSA, and is not, therefore, subject to the overtime provisions of the FLSA.

## III. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that plaintiffs' Motion for Summary Judgment should be, and is hereby, DENIED in its entirety.

IT IS FURTHER ORDERED that, finding the first three grounds in defendants' Motion for Summary Judgment to be dispositive, defendants' Motion for Summary

---

**6.** A statement made by Mr. Howard on June 23, 1986, in a letter to the Department of Labor, sheds further light on this subject. In that letter he stated the following:

"We are a program that provides 24 hour care for the emotional well being of children. We work with children who are homeless, neglected, and abused; the education of these children is a part of the program but not the *primary* purpose. Several years ago we recognized that many of our youngsters were not able to cope in the public schools because of their defficiencies [sic] in education. At that time we started a special tutoring program *to work* with them to bring up their grade levels and to help them learn to manage their behavior. We had occasions where children would act out in school and, if they were kicked out, had no place to go except the state institution. As time progressed, more and more of the children came to us with

educational defficiencies [sic], therefore, we started a program that was coordinated with the Minidoka School District wherein they provided special education teachers to work with our youngsters and our facility. *The goal was to mainstream them back into the public school as soon as possible.* The State Department of Education, in their evaluation of the program, felt that a closer relationship between our Casework Directors could be better achieved if the teachers were part of our program. The State entered into a contract with us to provide educational services to these youngsters so that we could provide a team approach to help the youngster reach *the goal of being mainstreamed back into the public schools.*"

*See* Affidavit in Support of Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, filed Aug. 21, 1989, Exhibit E at 1–2 (emphasis added).

judgment should be, and is hereby, GRANTED.